# EXHIBIT A

AO 440 (Rev. 8/01) Summons in a Civil Action

# UNITED STATES DISTRICT COURT

Southern     District of     New York

CA, INC.,

V.

AMX INTERNATIONAL, INC.,

**SUMMONS IN A CIVIL ACTION**

# 07 CIV 9799

CASE NUMBER:

TO: (Name and address of Defendant)

AMX INTERNATIONAL, INC.,
1664 First Street
Idaaho Falls, ID 83401

**YOU ARE HEREBY SUMMONED** and required to serve on PLAINTIFF'S ATTORNEY (name and address)

Farrell Fritz, P.C.
John P. McEntee, Esq.
1320 RexCorp.Plaza
Uniondale, NY  11556
(516) 227-0700

an answer to the complaint which is served on you with this summons, within _____ 20 _____ days after service of this summons on you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint. Any answer that you serve on the parties to this action must be filed with the Clerk of this Court within a reasonable period of time after service.

**J. MICHAEL McMAHON**
_____
CLERK

NOV 0 5 2007
_____
DATE

(By) DEPUTY CLERK

AO 440 (Rev. 8/01) Summons in a Civil Action

## RETURN OF SERVICE

| | DATE |
|---|---|
| Service of the Summons and complaint was made by me[1] | |
| NAME OF SERVER *(PRINT)* | TITLE |

*Check one box below to indicate appropriate method of service*

☐ Served personally upon the defendant. Place where served:

☐ Left copies thereof at the defendant's dwelling house or usual place of abode with a person of suitable age and discretion then residing therein.

  Name of person with whom the summons and complaint were left:

☐ Returned unexecuted:

☐ Other (specify):

## STATEMENT OF SERVICE FEES

| TRAVEL | SERVICES | TOTAL $0.00 |
|---|---|---|

## DECLARATION OF SERVER

  I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Return of Service and Statement of Service Fees is true and correct.

Executed on _____    _____
              Date                              *Signature of Server*

              _____
                            *Address of Server*

(1) As to who may serve a summons see Rule 4 of the Federal Rules of Civil Procedure.

John P. McEntee
David A. Scheffel
FARRELL FRITZ, P.C.
*Attorneys for Plaintiff*
1320 RexCorp Plaza
Uniondale, NY 11556
(516) 227-0700

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
----------------------------------------------------------------x
CA, INC.,                                         :
                                                  :    Docket No.
                           Plaintiff,             :
                                                  :    COMPLAINT
              -against-                           :
                                                  :
AMX INTERNATIONAL, INC.,                          :
                                                  :
                           Defendant.             :
----------------------------------------------------------------X
```

Plaintiff CA, Inc., formerly known as Computer Associates International. Inc. ("CA"), by

its attorneys Farrell Fritz, P.C., for its Complaint against defendant AMX International, Inc.

("AMX"), alleges as follows:

### Nature of the Action

1.      This is an action to recover money damages for AMX's use of computer software

in violation of a settlement agreement. In that agreement, AMX promised to, among other

things, discontinue its use of certain CA software, return the software and related materials to

CA, and certify in writing its compliance with the agreement. AMX did not comply with the

agreement. As a result, CA moved for (and was awarded) a permanent injunction directing

AMX to delete all copies of the software and barring it from any further use of the software. CA

now seeks to recover damages for AMX's use of the CA software in violation of the settlement

agreement.

## Jurisdiction & Venue

2.      This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1332.

3.      The matter in controversy exceeds $75,000, exclusive of interest and costs and there is diversity of citizenship between the parties.

4.      Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(a).

5.      This Court also has jurisdiction over the subject matter of this action, and venue is proper in this judicial district, pursuant to the Negotiated Settlement Agreement, dated as of July 11, 2005, which provides that "[t]he parties consent to the continuing jurisdiction of the Hon. Loretta Taylor Swain to enforce the terms of this Agreement." A copy of the Negotiated Settlement Agreement is annexed hereto as Exhibit "1."

6.      This Court also has jurisdiction over the subject matter of this action, and venue is proper in this judicial district, pursuant to the "So-Ordered" Stipulation and Order of Dismissal, dated October 21, 2005, which provides that "[t]he parties . . . stipulate that the Court shall retain jurisdiction to enforce the terms of the Negotiated Settlement Agreement." A copy of the Stipulation and Order of Dismissal is annexed hereto as Exhibit "2."

## Parties

7.      CA is a leading developer of business software. It, among other things, licenses its proprietary software and maintenance services to independent software vendors who, in turn, develop products incorporating CA's software for resale to end-users. CA is a Delaware corporation with its principal place of business in Islandia, New York.

8.      AMX, upon information and belief, is a software consulting and services firm. AMX is an Idaho corporation with its principal place of business in Idaho Falls, Idaho.

## Facts Concerning All Claims For Relief

**A.     The Underlying Action.**

9.     In October 2004, CA commenced an action (the "Action") in this court to enforce two software licensing agreements with AMX.

10.     These license agreements had allowed AMX to develop and distribute a computer software package incorporating certain CA software products in consideration for the payment of certain license fees to CA.

11.     In the Action, CA alleged AMX failed to pay CA certain fees required under the licensing agreements.

12.     In July 2005, the parties settled the Action pursuant to a written Negotiated Settlement Agreement. *See* Ex. 1.

13.     On October 24, 2005, the Court entered a Stipulation and Order of Dismissal (the "Order"), dismissing the Action pursuant to the terms of the Negotiated Settlement Agreement. *See* Ex. 2.

**B.     The Negotiated Settlement Agreement.**

14.     The Negotiated Settlement Agreement provides, among other things, that in consideration for AMX's timely payment to CA of four quarterly installments of twenty-five thousand ($25,000.00) dollars, AMX was permitted to continue to use certain CA software products (the "Permitted Products") until no later than June 1, 2006.

15.     AMX was required to return the Permitted Products to CA on or before June 1, 2006, and to certify to CA that AMX had (a) stopped all use of the Permitted Products; (b) deleted all copies of the Permitted Products from all computer libraries and storage devices; and

(c) returned to CA all electronic media, documentation and other items relating to the Permitted Products.

16.    The Negotiated Settlement Agreement provided AMX with the option to extend its retention and use of the Permitted Products until no later than September 1, 2006, by tendering an additional payment of twenty-five thousand ($25,000.00) dollars on or before May 15, 2006 (the "Extension Payment").

17.    In breach of the Negotiated Settlement Agreement, AMX refused to return the Permitted Products to CA by June 1, 2006, and continued to use some or all of the products without CA's permission and without payment to CA.

18.    On or about April 16, 2007, after repeated demands by CA that AMX discontinue its use of the Permitted Products, AMX made the Extension Payment to CA.

19.    AMX's use of the Permitted Products after September 1, 2006 was without CA's permission and without payment to CA.

**C.    The Injunction.**

20.    On or about May 31, 2007, CA moved to enforce the Negotiated Settlement Agreement and to enjoin AMX from continuing to use the Permitted Products in violation of the Negotiated Settlement Agreement.

21.    By Decision and Order dated September 19, 2007, the Hon. Loretta Taylor Swain found that AMX had violated the Negotiated Settlement Agreement by continuing to use the Permitted Products and failing to return them to CA. Judge Swain accordingly granted CA an injunction, providing as follows:

> Defendant AMX shall be barred from all use of the "Permitted Products" (as defined by Paragraph 4.c of the Settlement Agreement) within fifteen (15) days of entry of this order, and Defendant AMX shall delete all copies of the Permitted Products

from all computer libraries and storage devices within fifteen (15) days of the entry of this order.

A copy of the Order is annexed hereto as Exhibit "3."

22.    On or about October 2, 2007, AMX filed a certification in the Action stating it was no longer using the Permitted Products.  It, however, returned no materials to CA.

## FIRST CLAIM FOR RELIEF

### (Breach of Contract: Money Damages)

23.    CA repeats and realleges each and every allegation contained in paragraph "1" through "22" as if fully set forth herein.

24.    AMX failed to return the Permitted Products to CA on or before September 1, 2006.

25.    AMX used, or had the ability to use, the Permitted Products continuously from September 1, 2006 to October 2, 2007 ("Unauthorized Use Period").

26.    AMX did not make any payment to CA for its use of, or its ability to use, the Permitted Products during the Unauthorized Use Period.

27.    AMX's retention and use of the Permitted Products during the Unauthorized Use Period is a breach of the Negotiated Settlement Agreement.

28.    CA has been damaged by AMX's retention and use of the Permitted Products in an amount to be determined at trial, but not less than $260,000, constituting the retail value for the use of, or the right to use, the Permitted Products during the Unauthorized Use Period.

29.    By reason of the foregoing, CA is entitled to a money judgment against AMX in an amount to be determined at trial, but not less than $245,000, together with interest.

## SECOND CLAIM FOR RELIEF

### (Quantum Meruit)

30.    CA repeats and realleges each and every allegation contained in paragraph "1" through "22" and "24" through "26" as if fully set forth herein.

31.    AMX has been unjustly enriched by its use of, or retention of its ability to use, the Permitted Products during the Unauthorized Use Period without payment to CA.

32.    The retail value for the use of, or the right to use, the Permitted Products during the Unauthorized Use Period is not less than $245,000.

33.    By reason of the forgoing, CA is entitled to a money judgment against AMX in an amount to be determined at trial, but not less than $245,000, with interest.

**WHEREFORE**, plaintiff CA, Inc. demands judgment against defendant AMX International, Inc., as follows:

a.    On the First Claim for Relief, a money judgment in an amount to be determined at trial, but not less than $245,000, plus accrued interest;

b.    On the Second Claim for Relief, a money judgment in an amount to be determined at trial, but not less than $245,000; and

c.    Such other and further relief to CA as the Court may deem appropriate.

Dated: Uniondale, New York
       November 1, 2007

FARRELL FRITZ, P.C.

By: _____
   John P. McEntee
   David A. Scheffel
   *Attorneys for Plaintiff*
   1320 RexCorp Plaza
   Uniondale, New York 11556
   (516) 227-0700

6

**Exhibit 1**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
COMPUTER ASSOCIATES INTERNATIONAL, INC.,

               Plaintiff,

       - against -

AMX INTERNATIONAL, INC.,

               Defendant.
-----------------------------------------------------------------X

04 CV 9134 (LTS) (KNF).

## NEGOTIATED SETTLEMENT AGREEMENT

**WHEREAS**, plaintiff Computer Associates International, Inc., which is defined for purposes of this Agreement to include any present or former parent corporations, subsidiaries, divisions, successors, creditors, assigns, officers, directors, agents, representatives or employees thereof (collectively referred to as "Plaintiff"); and defendant AMX International, Inc., which is defined for purposes of this Agreement to include any present or former, parent corporations, subsidiaries, divisions, affiliates, successors, creditors, assigns, partners, directors, agents, representatives or employees thereof (collectively referred to as "Defendant"), desire to resolve, settle and agree to dismiss with prejudice all claims and all issues raised in or by Plaintiff's Complaint and Defendant's Counterclaims, without further litigation or adjudication; and

**WHEREAS**, Plaintiff and Defendant understand and agree that each of them denies each and every allegation of wrongdoing, including, but not limited to, the allegations and statements contained in the pleadings; and

**WHEREAS**, Plaintiff and Defendant understand and agree that neither the making of this Agreement nor anything contained herein shall be construed or considered in any way to be an admission by any party of guilt or noncompliance with federal, state, or local statute, order,

regulation or ordinance, public policy, tort (whether intentional, negligent or otherwise), contract (whether oral or written, express or implied), common law, or of any other wrongdoing whatsoever; and

WHEREAS, this action shall be dismissed in its entirety and with prejudice by the Court upon Plaintiff's and Defendant' stipulation:

NOW, THEREFORE, IT IS STIPULATED AND AGREED BY AND BETWEEN THE PARTIES THAT:

1.    **Execution**

The terms of this Agreement are the product of mutual negotiation and compromise between Plaintiff and Defendant.  Plaintiff and Defendant each confirm that they have been represented by counsel throughout this action, that counsel has fully explained the effect and terms of this Agreement, and that they each freely and knowingly enter into this Agreement intending to waive, settle and release all claims raised in the Complaint and in the Counterclaims.  The parties acknowledge that they each may hereafter discover facts different from or in addition to those known or now believed to be true with respect to the matters released or described in this Agreement, and agree that the waivers, releases and agreements contained herein shall be and will remain effective in all respects notwithstanding any later discovery of any such different or additional facts.  Each of the parties assumes any and all risk of any mistake in connection with the true facts involved in the matters, disputes, or controversies described in this Agreement or with regard to any facts that are now unknown to any or all of the parties.

## 2.   <u>Waiver and General Release of Claims</u>

In exchange for the consideration provided by Defendant in this Agreement, the sufficiency of which is hereby acknowledged, and except as to any action or proceeding to enforce the terms of this Agreement, Plaintiff (a) waives its right to commence, maintain, prosecute, or participate in any action, charge, complaint or proceeding (on its own behalf or on behalf of any other person or entity), whether individually or as a member of any alleged class of persons, in any court, or before any administrative or investigate agency (whether public, quasi-public or private) against Defendant, and each of them, and (b) releases Defendant from any and all claims and causes of action it has against Defendant arising out of the purchase, service, maintenance and licensing agreements which form the basis of the Plaintiff's claims.

In exchange for the consideration provided by Plaintiff in this Agreement, the sufficiency of which is hereby acknowledged, and except as to any action or proceeding to enforce the terms of this Agreement, Defendant (a) waives its right to commence, maintain, prosecute, or participate in any action, charge, complaint or proceeding (on their own behalf or on behalf of any other person or entity), whether individually or as a member of any alleged class of persons, in any court, or before any administrative or investigate agency (whether public, quasi-public or private), against Plaintiff, and (b) releases Plaintiff from any and all claims and causes of action against Plaintiff from the beginning of the world to the date of this Agreement.

## 3.   <u>Commitments</u>

In addition to the waiver and release of claims in paragraph "2" above, and in exchange for the promises made by the parties in paragraph "4" below, the parties agree they will each execute all documents and such supplemental, further or modifying documents, including, without limitation, the <u>Stipulation For Entry of an Order of Final Dismissal With Prejudice</u>

(annexed hereto as Exhibit A), needed to settle, dismiss and withdraw, with prejudice, any and all complaints, suits, actions, charges, claims or proceedings relating to all claims and counterclaims asserted in this Action.

4.    **Consideration**

In exchange for Plaintiff's release and waiver of claims and the discontinuance with prejudice of this Action, Defendant shall:

a.    Pay to Plaintiff the total sum of $100,000, payable in four equal installments of $25,000 on August 1, 2005, November 1, 2005, February 1, 2006, and May 1, 2006;

b.    Deliver to Plaintiff, within five business days of the discontinuance of this action, the following products, including all documentation relating to the following products (collectively, the "Surrendered Products"):

| Product Name |
| --- |
| AllFusion® Gen 1-10 Developers License for COOL:Qwik MULTI-PLATFORM |
| AllFusion® Gen Implementation Toolset Option MVS |
| AllFusion® Gen Report Composer from CANAM Software MULTI-PLATFORM |
| CA Common Services MVS |
| AllFusion® Gen Proxy Programming Interface Option for Java MULTI-PLATFORM |

together with a certification to Plaintiff stating that Defendant has stopped all use of the Surrendered Products, has deleted all copies of the Surrendered Products from all computer libraries and storage devices, and has returned to Defendant all electronic media, documentation, and other items relating to the Surrendered Products, in the form annexed hereto as Exhibit "B;"

c.    Deliver to Plaintiff, on or before June 1, 2006 (the "Final Surrender Date"), the following products, including all documentation relating to the following products (collectively, the "Permitted Products"):

| Product Name |
| --- |
| AllFusion® Gen Encyclopedia Server Option IBM AIX |
| AllFusion® Gen Implementation Toolset Client/Serve WINDOWS NT |

AllFusion® Gen IT (C/S) IBM AIX
AllFusion® Gen Workstation Analyst Toolset WINDOWS-ALL
AllFusion® Gen Workstation Construction Toolset WINDOWS-ALL
AllFusion® Gen Workstation Cross Generation Option to UNIX MULTI-PLATFORM
AllFusion® Gen Workstation Cross Generation Option to Windows NT/2000 MULTI-PLATFORM
AllFusion® Gen Workstation Developer Toolset Option WINDOWS-ALL
AllFusion® Gen Communication Base Manager Option MULTI-PLATFORM
AllFusion® Gen Encyclopedia Construction Server IBM AIX
AllFusion® Gen Encyclopedia Cross Generation Option to UNIX MULTI-PLATFORM
AllFusion® Gen Encyclopedia Cross Generation Option to Windows NT/2000 MULTI-PLATFORM
AllFusion® Gen Middleware TCP/IP Option MULTI-PLATFORM

together with a certification to Plaintiff stating that Defendant has stopped all use of the Permitted Products, has deleted all copies of the Permitted Products from all computer libraries and storage devices, and has returned to Defendant all electronic media, documentation, and other items relating to the Permitted Products, in the form annexed hereto as Exhibit "B," provided, however, that Defendant has the option to extend to extend the Final Surrender Date to September 1, 2006 provided it pays to Plaintiff the sum of $25,000 on or before May 15, 2006.

5.   **Disclaimer of Warranty**

PLAINTIFF AND DEFENDANT AGREE THAT DEFENDANT'S USE OF THE PERMITTED PRODUCTS IS ON AN "AS IS" BASIS, THAT PLAINTIFF DISCLAIMS ALL WARRANTIES, EXPRESS OR IMPLIED, INCLUDING WITHOUT LIMITATION WARRANTIES OF MERCHANTABILITY AND FITNESS FOR A PARTICULAR PURPOSE, AND THAT PLAINTIFF DISCLAIMS ANY OBLIGATION TO SUPPORT OR PROVIDE TECHNICAL ASSISTANCE FOR THE PERMITTED PRODUCTS. PLAINTIFF AND DEFENDANT FURTHER AGREE THAT DEFENDANT SHALL NEITHER REQUEST NOR RECEIVE ANY MAINTENANCE SERVICES IN CONNECTION WITH THE PERMITTED PRODUCTS (INCLUDING, BUT NOT

LIMITED TO, TELEPHONIC SUPPORT, "BUG" FIXES, PATCHES, UPDATES, AND NEW RELEASES).

6. **Injunction; Money Judgment**

Plaintiff is entitled, in the event that Defendant defaults in its obligations under paragraph 4.b of this Agreement, after three days notice to Defendant of its default, to the immediate return of the Surrendered Products and to the entry of a permanent injunction that bars Defendant from all use of the Surrendered Products and directs it to delete all copies of the Surrendered Products from all computer libraries and storage devices.

Plaintiff is entitled, in the event that Defendant defaults in its obligations under paragraph 4.c of this Agreement, after three days notice to Defendant of its default, to the immediate return of the Permitted Products and to the entry of a permanent injunction that bars Defendant from all use of the Permitted Products and directs it to delete all copies of the Permitted Products from all computer libraries and storage devices.

Plaintiff is entitled, in the event that Defendant defaults in its obligations under paragraph 4.a of this Agreement to timely pay the installments due Plaintiff, after three days notice to Defendant of its default, to a money judgment in the amount of $592,784.65, less any amounts paid by Defendant under this Agreement, and to the entry of a permanent injunction that bars Defendant from all use of the Permitted Products and the Surrendered Products and directs it to delete all copies of the Permitted Products and the Surrendered Products from all computer libraries and storage devices.

7. **Right to Inspect**

Plaintiff may audit, with five (5) day's prior written notice, Defendant's available records and information systems to confirm the accuracy of the certifications required by paragraphs 4.b

6

and 4.c of this Agreement. Plaintiff shall bear the expense of an audit with the exception of instances where Defendant is found, through such an audit, to be in violation of the certifications. In such instances, Defendant will be invoiced for, and shall promptly pay, all reasonable time, travel and material costs associated with the audit. Audits shall be conducted during regular business hours at Defendant's facilities and shall not unreasonably interfere with Defendant's business. Audits shall be conducted no more than twice in any twelve-month period. The right to audit will expire two years after Defendant's delivery of the certification for the Permitted Products, as provided for in paragraph 4.c of this Agreement.

## 8.    Severability and Modification

Should any provision of this Agreement or the attachments hereto be declared illegal or unenforceable by any court, administrative agency or other entity and cannot be interpreted or modified to be enforceable (which the parties authorize said court, administrative agency or other entity to do), such provision shall immediately become null and void, leaving the remainder of this Agreement in full force and effect.

## 9.    Section Headings

Section headings are used herein for convenience of reference only and do not affect the meaning of any provision of this Agreement.

## 10.    Entire Agreement

This Agreement, which incorporates as covenants the representations and clauses in the introductory "Whereas" clauses, represents the complete understanding among Plaintiff and Defendant about the matters set forth in this Agreement and shall be interpreted under New York law without regard to New York's conflict or choice of law provisions.   Any action or proceeding arising under or relating to this Agreement shall be brought in a federal or state court

located in New York County, New York. No other promises or agreements shall be binding or shall modify this Agreement. This Agreement can be modified only by a written document signed by Plaintiff and by Defendant (or their legally designated representatives), which recites the specific intent to modify this Agreement.

## 11.    Notice

Except as otherwise specified in the Agreement, all notices, requests, approvals, consents and other communications required or permitted under this Agreement shall be in writing and shall be personally delivered or sent by (i) first class U.S. mail, registered or certified, return receipt requested, postage pre-paid; or (ii) U.S. express mail, or other, similar overnight courier service to the address specified below. Notices shall be deemed given on the day actually served by the party to whom the notice is addressed.

In the case of Plaintiff:       Computer Associates International, Inc.
                                One Computer Associate Plaza
                                Islandia, NY 11749
                                Attn: General Counsel

In the case of Defendant:       AMX International Inc.
                                c/o Michael D. Gaffney
                                Beard St. Clair
                                2105 Coronado
                                Idaho Falls, ID 83404

## 12.    Continuing Jurisdiction

The parties consent to the continuing jurisdiction of the Hon. Loretta Taylor Swain to enforce the terms of this Agreement.

THE TERMS OF THIS AGREEMENT, INCLUDING THE WAIVERS AND RELEASES, ARE THE PRODUCT OF MUTUAL NEGOTIATION AND COMPROMISE BETWEEN PLAINTIFF AND DEFENDANT. THE PARTIES HAVE

**READ AND FULLY CONSIDERED THIS AGREEMENT AND MUTUALLY DESIRE TO ENTER INTO THIS AGREEMENT.**

COMPUTER ASSOCIATES INTERNATIONAL, INC.

By: _____
Alexander G. Arato, Esq.
Vice President, Senior Counsel

STATE OF NEW YORK    )
                     ) ss.:
COUNTY OF SUFFOLK    )

On this 11th day of July, 2005, before me personally appeared Alexander G. Arato of Computer Associates International, Inc., personally known to me known or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he executed the same in his capacity and that by his signature on the instrument, the individual, or the person upon behalf of which the individual acted, executed the instrument.

BARBARA BOLAND
Notary Public, State of New York
No.01BO601047
Qualified in Suffolk County
Certified in Nassau County
Commission Expires July 13, 2006

_____
Notary Public

AMX INTERNATIONAL, INC.

By: Jay Price, President

STATE OF IDAHO        )
                      ) ss.:
COUNTY OF Bonneville  )

On this 7 day of July, 2005, before me personally appeared Jay Price of AMX International, Inc., personally known to me known or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he executed the same in his capacity and that by his signature on the instrument, the individual, or the person upon behalf of which the individual acted, executed the instrument.

_____
Notary Public
Residing at: Rexburg, ID
My Commission expires: 6-21-10

SHAUNTEL BELL
NOTARY PUBLIC
STATE OF IDAHO

FFDOCS1\631568.02

9

**Exhibit 2**

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 10/24/05

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

COMPUTER ASSOCIATES INTERNATIONAL, INC.,

Plaintiff,                          2004-CV-09134 (LTS)(KNF)

-against-                           STIPULATION AND ORDER
                                    OF DISMISSAL

AMX INTERNATIONAL, INC.,

Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

IT IS HEREBY STIPULATED AND AGREED, by and between the plaintiff and

defendant, that the above captioned action should be dismissed in its entirety, with prejudice, and

with no award of attorneys' fees, costs or disbursements to any party, pursuant to a Negotiated

Settlement Agreement between the parties.  The parties further stipulate and agree that the Court

shall retain jurisdiction to enforce the terms of the Negotiated Settlement Agreement.

LEHMAN & ELLEN LLP                          FARRELL FRITZ, P.C.


By: Scott D. Stechman (SS/    )             By:    John P. McEntee (JM4450)
Attorneys for Defendant                            David A. Scheffel (DS4035)
50 Charles Lindbergh Blvd.                  Attorneys for Plaintiff
Uniondale, NY 11553-3612                    EAB Plaza
(516) 222-0888                              Uniondale, New York 11556
                                            (516) 227-0700
BEARD ST CLAIR GAFFNEY
McNAMARA CALDER PA


By: Michael D. Gaffney
Attorneys for Defendant
2105 Coronado Street
Idaho Falls, Idaho 83404-7495
(208) 523-5171

                              SO ORDERED this 21 day of October,
                              2005 at New York, New York


                              Hon. Laura Taylor Swain

**Exhibit 3**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
———————————————————————x

COMPUTER ASSOCIATES INTERNATIONAL, INC.,

       Plaintiff,

  -v-                            No. 04 Civ. 9134 (LTS)(KNF)

AMX INTERNATIONAL, INC.,

       Defendant.

———————————————————————x

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: SEP 1 9 2007

## ORDER

    This case comes before the Court on a motion filed by CA, Inc., formerly known as Computer Associates International, Inc. ("CA" or "Plaintiff"). On May 31, 2007, CA moved for this Court to enforce a negotiated settlement agreement (the "Settlement Agreement") previously entered into by CA and Defendant AMX International, Inc. ("AMX" or "Defendant"). For the reasons explained below, the Court grants CA's motion and grants CA permanent injunctive relief.

    CA commenced the above-captioned action in October 2004, alleging that AMX had failed to pay certain licensing fees in connection with contracts entered into by both parties. In July 2005, CA and AMX resolved their dispute pursuant to terms set forth in the Settlement Agreement. (Settlement Agreement, annexed to May 30, 2007, Declaration of John P. McEntee as Ex. B.) Paragraph 4.c. of the Settlement Agreement required Defendant to:

        Deliver to Plaintiff, on or before June 1, 2006 (the "Final Surrender Date"), the following products, including all documentation relating to the following products (collectively, the "Permitted Products"): [listing products] together with a certification to Plaintiff stating that Defendant has stopped all use of the Permitted Products, has deleted all copies of the Permitted Products from all computer libraries and storage devices, and has returned to Defendant [sic] all electronic media, documentation, and other items relating to the Permitted Products, . . . provided, however, that Defendant has the option to extend to extend [sic] the Final Surrender Date to September 1,

2006[,] provided it pays to Plaintiff the sum of $25,000 on or before May 15, 2006.

CA asserts, and AMX does not deny, that as of June 1, 2006, AMX had not delivered the Permitted Products to Plaintiff, provided the required certification, or paid the $25,000 extension fee. John McEntee, counsel for CA, sent a letter to Michael D. Gaffney, counsel for AMX, on October 5, 2006, noting that AMX was in default of the Settlement Agreement. (Letter from McEntee to Gaffney, dated October 5, 2006, annexed to McEntee Decl. as Ex. C.) On October 19, 2006, Gaffney admitted in response:

> The "permitted products" identified in paragraph 4c apparently have not been returned due to miscommunication between [Jay] Price [the president of AMX] and the employees directed to return said items. I assure you that this was simply an oversight . . . . I explained to Mr. Price that the final surrender date could be extended to September 1, 2006 [by a] payment of $25,000; however, I would ask that your client waive this payment . . . .

(Letter from Gaffney to McEntee, dated October 19, 2006, annexed to McEntee Decl. as Ex. D.) On March 27, 2007, McEntee sent another letter to Gaffney noting that AMX had not cured its breach of the Settlement Agreement. (Letter from McEntee to Gaffney dated March 27, 2007, annexed to McEntee Decl. as Ex. F.) AMX paid CA the $25,000 extension fee on April 16, 2007, but its accompanying letter did not address the failure to deliver the Permitted Products. (Letter from Gaffney to McEntee dated April 16, 2007, annexed to McEntee Decl. as Ex. I.) On May 9, 2007, McEntee again noted that AMX still had not returned the Permitted Products or provided the required certification. (Letter from McEntee to Gaffney dated May 9, 2007, annexed to McEntee Decl. as Ex. J.) This motion soon followed.

Paragraph 6 of the Settlement Agreement provided that in the event of AMX's default under its obligations under Paragraph 4.c., after three days of giving Defendant notice of its default, Plaintiff would be entitled "to the entry of a permanent injunction that bars Defendant from all use of the Permitted Products and directs it to delete all copies of the Permitted Products from all computer

libraries and storage devices."

   This Court has jurisdiction to enforce the Settlement Agreement. On October 21, 2005, this Court so ordered a stipulation between the parties consenting to this Court's continued jurisdiction to enforce the terms of the Settlement Agreement. See Kokkonen v. Guardian Life Ins. Co. of Am., 511 U.S. 375, 381-82 (1994).

   AMX does not dispute its failure to perform under the terms of the Settlement Agreement. Rather, AMX argues that its non-performance is excused because: 1) CA breached the Settlement Agreement first; 2) CA breached the Settlement Agreement's implied covenant of good faith and fair dealing; and/or 3) CA has frustrated the purpose of the Settlement Agreement. In support of these arguments, AMX proffers the following facts:

   On July 31, 2000, CA licensed Cool:Gen, a software tool, to AMX for a term of five years. AMX used Cool:Gen in connection with Utiligy, one of AMX's applications used by AMX's clients, and AMX provided regular maintenance services for these clients in connection with their use of Utiligy. After the instant litigation was dismissed pursuant to the Settlement Agreement in July 2005, AMX allegedly made its best efforts to transition all existing Utiligy clients off of Cool:Gen, one of the "Permitted Products" listed in the Settlement Agreement.[1] AMX proffers that, due to the complexities of the software and Utiligy's total reliance on a now obsolete and unsupported Cool:Gen version 6.0, AMX was unable to transfer three of AMX's existing Utiligy clients off of Cool:Gen by the Settlement Agreement deadline. As a result, AMX approached CA numerous times in March and

---

[1]  The actual term "Cool:Gen" is not found in the exact terms of the relatively technical listing of "Permitted Products" found in Paragraph 4.c. However, as AMX refers to "Cool:Gen" as being covered under the terms of the Settlement Agreement and CA does not dispute AMX's use of that reference, the Court construes "Cool:Gen" to be one of the "Permitted Products" and adopts the "Cool:Gen" nomenclature for the sake of simplicity.

April 2007 (several months after the June 1, 2006, deadline) to discuss the possibility of licensing the Cool:Gen tool set. In response, after being alternatively receptive and non-responsive to AMX's entreaties over the course of several weeks, CA offered to sell a limited license to AMX, but for an annual fee several times the amount of other license fees that CA had offered to other parties for the same product. Having been unable to obtain a license from CA at a desired price, AMX sought to enter into negotiations with third parties who had valid Cool:Gen licenses in order to eventually assign AMX's maintenance responsibilities to these third parties. AMX is presently concerned that CA will "retaliate" against these third parties if they agree to assume AMX's maintenance responsibilities. AMX alleges that these negotiations cannot proceed unless CA promises that it will not retaliate.

Based on these proffered facts, AMX argues that CA's actions constituted a breach or anticipatory breach of the Settlement Agreement, thereby excusing AMX's own non-performance. However, even assuming all the proffered facts to be true, AMX does not cite, and the Court cannot find, a single provision of the Settlement Agreement that would be breached by any of the above actions. There is no mention of AMX's clients or any requirement that CA promise not to "retaliate" against various third parties. Therefore, AMX's failure to perform under the Settlement Agreement is not excused on this ground.

AMX argues, in the alternative, that CA's actions breached the Settlement Agreement's implied covenant of good faith and fair dealing. A covenant of good faith and fair dealing is implied in every contract governed by New York law, and it precludes each party from engaging in conduct that will deprive the other party of the benefits of their agreement. Leberman v. John Blair & Co., 880 F.2d 1555, 1560 (2d Cir. 1989). In this case, however, AMX has fully received the benefits it was entitled to under the Settlement Agreement. AMX was freed from CA's

claims of unpaid license fees and the Settlement Agreement allowed AMX to use the Permitted

Products until a specified date. CA has done nothing to prevent AMX from realizing these benefits.

AMX argues that CA has breached this implied covenant by preventing AMX from assigning its

maintenance responsibilities to a third party or acquiring a Cool:Gen license at a reasonable price, but

nothing in the Settlement Agreement could be read to entitle AMX to such benefits. There is not a

single mention of third party clients, and the Settlement Agreement certainly does not entitle AMX to

the underlined(continued) use of Cool:Gen on terms financially favorable to AMX when the Settlement

Agreement's explicit terms actually ensure AMX's underlined(discontinued) use of Cool:Gen. See Sabetay v.

Sterling Drug, Inc., 69 N.Y.2d 329, 335 (1987) ("No obligation can be implied, however, which

would be inconsistent with other terms of the contractual relationship"). Therefore, even if AMX's

proffers concerning CA's actions are true, there is no breach of the implied covenant of good faith

and fair dealing as a matter of law.

Finally, AMX argues that CA's actions have frustrated the purpose of the agreement,

thereby excusing AMX's failure to perform. As the Restatement (Second) of Contracts explains:

> Where, after a contract is made, a party's principal purpose is substantially frustrated
> without his fault by the occurrence of an event the non-occurrence of which was a
> basic assumption on which the contract was made, his remaining duties to render
> performance are discharged, unless the language or circumstances indicate the
> contrary.

Restatement (Second) of Contracts § 265 (1981). See also Crown It Services, Inc. v. Koval-Olsen,

782 N.Y.S.2d 708, 711 (N.Y. App. Div. 1st Dep't 2004) (citing Restatement). The doctrine is a

narrow one which does not apply unless the frustration is substantial. Id. (citing Rockland Dev.

Assocs. v. Richlou Auto Body, Inc., 570 N.Y.S.2d 343, 343 (N.Y. App. Div. 2d Dep't 1991)). AMX

asserts, without citing any supporting evidence, that one purpose under the Settlement Agreement

was to "prevent economic loss to innocent third parties." (Opp'n at 12.) AMX cites no cases to

support this proposition, and AMX does not cite a single provision in the Settlement Agreement that would serve as a basis for this conclusory proposition. Therefore, AMX has failed to excuse its non-performance under the frustration of purpose doctrine.

For the foregoing reasons, CA's motion to enforce the Settlement Agreement is granted. Accordingly, pursuant to Paragraph 6 of the Settlement Agreement, the Court hereby enters a permanent injunction as follows: Defendant AMX shall be barred from all use of the "Permitted Products" (as defined by Paragraph 4.c. of the Settlement Agreement) within fifteen (15) days of the entry of this order, and Defendant AMX shall delete all copies of the Permitted Products from all computer libraries and storage devices within fifteen (15) days of the entry of this order.

SO ORDERED.

Dated:      New York, New York
            September 4, 2007


                                            _____
                                            LAURA TAYLOR SWAIN
                                            United States District Judge

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

CA, INC.,

Plaintiff,

-against-

AMX INTERNATIONAL, INC.

Defendant.

## SUMMONS & COMPLAINT

Farrell Fritz, P.C.

*Attorneys for Plaintiff*

EAB Plaza
14th Floor, West Tower
Uniondale, NY 11556-1320
516.227.0700