# EXHIBIT E

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------x

COMPUTER ASSOCIATES INTERNATIONAL, INC.,

    Plaintiff,

-v-                                      No. 04 Civ. 9134 (LTS)(KNF)

AMX INTERNATIONAL, INC.,

    Defendant.

-------------------------------------------------------x

<pre>USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: SEP 1 9 2007</pre>

### ORDER

        This case comes before the Court on a motion filed by CA, Inc., formerly known as Computer Associates International, Inc. ("CA" or "Plaintiff"). On May 31, 2007, CA moved for this Court to enforce a negotiated settlement agreement (the "Settlement Agreement") previously entered into by CA and Defendant AMX International, Inc. ("AMX" or "Defendant"). For the reasons explained below, the Court grants CA's motion and grants CA permanent injunctive relief.

        CA commenced the above-captioned action in October 2004, alleging that AMX had failed to pay certain licensing fees in connection with contracts entered into by both parties. In July 2005, CA and AMX resolved their dispute pursuant to terms set forth in the Settlement Agreement. (Settlement Agreement, annexed to May 30, 2007, Declaration of John P. McEntee as Ex. B.) Paragraph 4.c. of the Settlement Agreement required Defendant to:

> Deliver to Plaintiff, on or before June 1, 2006 (the "Final Surrender Date"), the following products, including all documentation relating to the following products (collectively, the "Permitted Products"): [listing products] together with a certification to Plaintiff stating that Defendant has stopped all use of the Permitted Products, has deleted all copies of the Permitted Products from all computer libraries and storage devices, and has returned to Defendant [sic] all electronic media, documentation, and other items relating to the Permitted Products, . . . provided, however, that Defendant has the option to extend to extend [sic] the Final Surrender Date to September 1,

2006[,] provided it pays to Plaintiff the sum of $25,000 on or before May 15, 2006.

CA asserts, and AMX does not deny, that as of June 1, 2006, AMX had not delivered the Permitted Products to Plaintiff, provided the required certification, or paid the $25,000 extension fee. John McEntee, counsel for CA, sent a letter to Michael D. Gaffney, counsel for AMX, on October 5, 2006, noting that AMX was in default of the Settlement Agreement. (Letter from McEntee to Gaffney, dated October 5, 2006, annexed to McEntee Decl. as Ex. C.) On October 19, 2006, Gaffney admitted in response:

> The "permitted products" identified in paragraph 4c apparently have not been returned due to miscommunication between [Jay] Price [the president of AMX] and the employees directed to return said items. I assure you that this was simply an oversight . . . . I explained to Mr. Price that the final surrender date could be extended to September 1, 2006 [by a] payment of $25,000; however, I would ask that your client waive this payment . . . .

(Letter from Gaffney to McEntee, dated October 19, 2006, annexed to McEntee Decl. as Ex. D.) On March 27, 2007, McEntee sent another letter to Gaffney noting that AMX had not cured its breach of the Settlement Agreement. (Letter from McEntee to Gaffney dated March 27, 2007, annexed to McEntee Decl. as Ex. F.) AMX paid CA the $25,000 extension fee on April 16, 2007, but its accompanying letter did not address the failure to deliver the Permitted Products. (Letter from Gaffney to McEntee dated April 16, 2007, annexed to McEntee Decl. as Ex. I.) On May 9, 2007, McEntee again noted that AMX still had not returned the Permitted Products or provided the required certification. (Letter from McEntee to Gaffney dated May 9, 2007, annexed to McEntee Decl. as Ex. J.) This motion soon followed.

Paragraph 6 of the Settlement Agreement provided that in the event of AMX's default under its obligations under Paragraph 4.c., after three days of giving Defendant notice of its default, Plaintiff would be entitled "to the entry of a permanent injunction that bars Defendant from all use of the Permitted Products and directs it to delete all copies of the Permitted Products from all computer

libraries and storage devices."

This Court has jurisdiction to enforce the Settlement Agreement. On October 21, 2005, this Court so ordered a stipulation between the parties consenting to this Court's continued jurisdiction to enforce the terms of the Settlement Agreement. See Kokkonen v. Guardian Life Ins. Co. of Am., 511 U.S. 375, 381-82 (1994).

AMX does not dispute its failure to perform under the terms of the Settlement Agreement. Rather, AMX argues that its non-performance is excused because: 1) CA breached the Settlement Agreement first; 2) CA breached the Settlement Agreement's implied covenant of good faith and fair dealing; and/or 3) CA has frustrated the purpose of the Settlement Agreement. In support of these arguments, AMX proffers the following facts:

On July 31, 2000, CA licensed Cool:Gen, a software tool, to AMX for a term of five years. AMX used Cool:Gen in connection with Utiligy, one of AMX's applications used by AMX's clients, and AMX provided regular maintenance services for these clients in connection with their use of Utiligy. After the instant litigation was dismissed pursuant to the Settlement Agreement in July 2005, AMX allegedly made its best efforts to transition all existing Utiligy clients off of Cool:Gen, one of the "Permitted Products" listed in the Settlement Agreement.[1] AMX proffers that, due to the complexities of the software and Utiligy's total reliance on a now obsolete and unsupported Cool:Gen version 6.0, AMX was unable to transfer three of AMX's existing Utiligy clients off of Cool:Gen by the Settlement Agreement deadline. As a result, AMX approached CA numerous times in March and

---

[1] The actual term "Cool:Gen" is not found in the exact terms of the relatively technical listing of "Permitted Products" found in Paragraph 4.c. However, as AMX refers to "Cool:Gen" as being covered under the terms of the Settlement Agreement and CA does not dispute AMX's use of that reference, the Court construes "Cool:Gen" to be one of the "Permitted Products" and adopts the "Cool:Gen" nomenclature for the sake of simplicity.

April 2007 (several months after the June 1, 2006, deadline) to discuss the possibility of licensing the Cool:Gen tool set. In response, after being alternatively receptive and non-responsive to AMX's entreaties over the course of several weeks, CA offered to sell a limited license to AMX, but for an annual fee several times the amount of other license fees that CA had offered to other parties for the same product. Having been unable to obtain a license from CA at a desired price, AMX sought to enter into negotiations with third parties who had valid Cool:Gen licenses in order to eventually assign AMX's maintenance responsibilities to these third parties. AMX is presently concerned that CA will "retaliate" against these third parties if they agree to assume AMX's maintenance responsibilities. AMX alleges that these negotiations cannot proceed unless CA promises that it will not retaliate.

Based on these proffered facts, AMX argues that CA's actions constituted a breach or anticipatory breach of the Settlement Agreement, thereby excusing AMX's own non-performance. However, even assuming all the proffered facts to be true, AMX does not cite, and the Court cannot find, a single provision of the Settlement Agreement that would be breached by any of the above actions. There is no mention of AMX's clients or any requirement that CA promise not to "retaliate" against various third parties. Therefore, AMX's failure to perform under the Settlement Agreement is not excused on this ground.

AMX argues, in the alternative, that CA's actions breached the Settlement Agreement's implied covenant of good faith and fair dealing. A covenant of good faith and fair dealing is implied in every contract governed by New York law, and it precludes each party from engaging in conduct that will deprive the other party of the benefits of their agreement. Leberman v. John Blair & Co., 880 F.2d 1555, 1560 (2d Cir. 1989). In this case, however, AMX has fully received the benefits it was entitled to under the Settlement Agreement. AMX was freed from CA's

claims of unpaid license fees and the Settlement Agreement allowed AMX to use the Permitted Products until a specified date. CA has done nothing to prevent AMX from realizing these benefits. AMX argues that CA has breached this implied covenant by preventing AMX from assigning its maintenance responsibilities to a third party or acquiring a Cool:Gen license at a reasonable price, but nothing in the Settlement Agreement could be read to entitle AMX to such benefits. There is not a single mention of third party clients, and the Settlement Agreement certainly does not entitle AMX to the _continued_ use of Cool:Gen on terms financially favorable to AMX when the Settlement Agreement's explicit terms actually ensure AMX's _discontinued_ use of Cool:Gen. See Sabetay v. Sterling Drug, Inc., 69 N.Y.2d 329, 335 (1987) ("No obligation can be implied, however, which would be inconsistent with other terms of the contractual relationship"). Therefore, even if AMX's proffers concerning CA's actions are true, there is no breach of the implied covenant of good faith and fair dealing as a matter of law.

Finally, AMX argues that CA's actions have frustrated the purpose of the agreement, thereby excusing AMX's failure to perform. As the Restatement (Second) of Contracts explains:

> Where, after a contract is made, a party's principal purpose is substantially frustrated without his fault by the occurrence of an event the non-occurrence of which was a basic assumption on which the contract was made, his remaining duties to render performance are discharged, unless the language or circumstances indicate the contrary.

Restatement (Second) of Contracts § 265 (1981). See also Crown It Services, Inc. v. Koval-Olsen, 782 N.Y.S.2d 708, 711 (N.Y. App. Div. 1st Dep't 2004) (citing Restatement). The doctrine is a narrow one which does not apply unless the frustration is substantial. Id. (citing Rockland Dev. Assocs. v. Richlou Auto Body, Inc., 570 N.Y.S.2d 343, 343 (N.Y. App. Div. 2d Dep't 1991)). AMX asserts, without citing any supporting evidence, that one purpose under the Settlement Agreement was to "prevent economic loss to innocent third parties." (Opp'n at 12.) AMX cites no cases to

support this proposition, and AMX does not cite a single provision in the Settlement Agreement that would serve as a basis for this conclusory proposition. Therefore, AMX has failed to excuse its non-performance under the frustration of purpose doctrine.

For the foregoing reasons, CA's motion to enforce the Settlement Agreement is granted. Accordingly, pursuant to Paragraph 6 of the Settlement Agreement, the Court hereby enters a permanent injunction as follows: Defendant AMX shall be barred from all use of the "Permitted Products" (as defined by Paragraph 4.c. of the Settlement Agreement) within fifteen (15) days of the entry of this order, and Defendant AMX shall delete all copies of the Permitted Products from all computer libraries and storage devices within fifteen (15) days of the entry of this order.

SO ORDERED.

Dated:   New York, New York
         September 19, 2007

                                                    _____
                                                    LAURA TAYLOR SWAIN
                                                    United States District Judge