UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------X

CA, INC.,

                                  **Plaintiff,**

                    - against -

AMX INTERNATIONAL, INC.,

                                  **Defendant.**

------------------------------------------------------------------X

**Civil Action No.**
  **07 CV 9799 (LTS)(KNF)**

**NOTICE OF CROSS-MOTION**

**PLEASE TAKE NOTICE** that upon the attached affidavit of Jay Price, sworn to July 23, 2008, the exhibits annexed thereto, the affidavit of Scott D. Stechman, dated July 24, 2008, the exhibits annexed thereto, defendant's statement pursuant to S.D.N.Y. Local Rule 56.1(a) of material facts as to which it contends that there exists no genuine issue to be tried, and all prior pleadings and proceedings heretofore had herein, defendant AMX International, Inc. ("AMX"), will cross-move this Court before the Honorable Laura Taylor Swain, at the Daniel Patrick Moynihan Courthouse, located at 500 Pearl Street, New York, New York on August 5, 2008 at 5:00 p.m., or as soon thereafter as counsel can be heard, for an order, pursuant to Fed. R. Civ. P. 56(b) and S.D.N.Y. Local Rule 56.1, granting summary judgment against plaintiff CA, Inc. dismissing the Complaint in its entirety, together with such other and further relief as the Court deems just and proper.

**PLEASE TAKE FURTHER NOTICE** that pursuant to S.D.N.Y. Local Rule 6.1(b), answering papers, if any, must be served so as to be received by the undersigned on or before July 31, 2008.

Pursuant to Section 2.B of the Court's Individual Practices, defendant AMX International, Inc. certifies that it has used its best efforts to resolve informally the matters raised in this motion.

DATED:     Uniondale, New York
           July 24, 2008

                              **LEHMAN & EILEN LLP**

                              By: _____
                                   Scott D. Stechman (SS-1803)
                                   50 Charles Lindbergh Blvd. - Suite 505
                                   Uniondale, New York 11553
                                   (516) 222-0888

                              *Attorneys for Defendant*
                              *AMX International, Inc.*


                              BEARD ST. CLAIR GAFFNEY PA
                              2105 Coronado Street
                              Idaho Falls, Idaho 83404
                              (208) 557-5203

                              *Counsel for Defendant*
                              *AMX International, Inc.*


TO:    FARRELL FRITZ, P.C.
       Attn: John P. McEntee, Esq.
       RexCorp Plaza
       West Tower – 14th Floor
       Uniondale, New York 11556-0120
       (516) 227-0700

       *Attorneys for Plaintiff*
       *CA, Inc.*

STECHMAN AFFIDAVIT

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------X

CA, INC.,                                                    :
                                                             :    Civil Action No.
                                        Plaintiff,           :      07 CV 09799 (LTS)(KNF)
                                                             :
                                                             :    AFFIDAVIT OF
                                                             :    SCOTT D. STECHMAN
                           - against -                       :    IN SUPPORT OF
                                                             :    DEFENDANT'S CROSS-
                                                             :    MOTION FOR SUMMARY
                                                             :    JUDGMENT AND IN
                                                             :    OPPOSITION TO
AMX INTERNATIONAL, INC.,                                     :    PLAINTIFF'S MOTION
                                                             :    FOR PARTIAL SUMMARY
                                                             :    JUDGMENT_____
                                        Defendant.           :
                                                             :
------------------------------------------------------------------X


STATE OF NEW YORK     )
                      ) ss.:
COUNTY OF NASSAU      )


 

**SCOTT D. STECHMAN,** being duly sworn, deposes and says:

1.     I am a member of the Bar of this court and am counsel to the law firm of Lehman

& Eilen LLP, attorneys for defendant AMX International, Inc. ("AMX"). I submit this affidavit

in support of defendant AMX's cross-motion, pursuant to Federal Rule of Civil Procedure 56(b)

and S.D.N.Y. Local Rule 56.1, for an order granting summary judgment on Count One and

Count Two of the Complaint, and in opposition to plaintiff CA, Inc.'s ("CA") motion for partial

summary judgment on the issue of liability on Count One of the Complaint.

2.     A copy of the Complaint is annexed hereto as Ex. "1."

3.     A copy of the Answer and Jury Demand is annexed hereto as Ex. "2."

4.    A copy of this Court's order granting CA's motion to enforce the negotiated

settlement agreement between the parties and granting CA permanent injunctive relief, dated

September 19, 2007, is annexed hereto as Ex. "3."

_____

SCOTT D. STECHMAN

Sworn to before me this
24rd day of July, 2008

_____
Notary Public

**JOAN P. HUGUES**
**Notary Public, State of New York**
**No. 01HU6097931**
**Qualified in Nassau County**
**Commission Expires:  09/02/11**

2

EXHIBIT "1"

John P. McEntee
David A. Scheffel
FARRELL FRITZ, P.C.
*Attorneys for Plaintiff*
1320 RexCorp Plaza
Uniondale, NY 11556
(516) 227-0700

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------x

CA, INC.,                                    :

                               :  Docket No.

               Plaintiff,                    :

                               :  **COMPLAINT**

    -against-                          :

                               :

AMX INTERNATIONAL, INC.,               :

                               :

             Defendant.                     :

---------------------------------------------------------X

      Plaintiff CA, Inc., formerly known as Computer Associates International. Inc. ("CA"), by

its attorneys Farrell Fritz, P.C., for its Complaint against defendant AMX International, Inc.

("AMX"), alleges as follows:

### Nature of the Action

      1.      This is an action to recover money damages for AMX's use of computer software

in violation of a settlement agreement.  In that agreement, AMX promised to, among other

things, discontinue its use of certain CA software, return the software and related materials to

CA, and certify in writing its compliance with the agreement.  AMX did not comply with the

agreement.  As a result, CA moved for (and was awarded) a permanent injunction directing

AMX to delete all copies of the software and barring it from any further use of the software.  CA

now seeks to recover damages for AMX's use of the CA software in violation of the settlement

agreement.

## Jurisdiction & Venue

2.      This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1332.

3.      The matter in controversy exceeds $75,000, exclusive of interest and costs and there is diversity of citizenship between the parties.

4.      Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(a).

5.      This Court also has jurisdiction over the subject matter of this action, and venue is proper in this judicial district, pursuant to the Negotiated Settlement Agreement, dated as of July 11, 2005, which provides that "[t]he parties consent to the continuing jurisdiction of the Hon. Loretta Taylor Swain to enforce the terms of this Agreement." A copy of the Negotiated Settlement Agreement is annexed hereto as Exhibit "1."

6.      This Court also has jurisdiction over the subject matter of this action, and venue is proper in this judicial district, pursuant to the "So-Ordered" Stipulation and Order of Dismissal, dated October 21, 2005, which provides that "[t]he parties . . . stipulate that the Court shall retain jurisdiction to enforce the terms of the Negotiated Settlement Agreement." A copy of the Stipulation and Order of Dismissal is annexed hereto as Exhibit "2."

## Parties

7.      CA is a leading developer of business software. It, among other things, licenses its proprietary software and maintenance services to independent software vendors who, in turn, develop products incorporating CA's software for resale to end-users. CA is a Delaware corporation with its principal place of business in Islandia, New York.

8.      AMX, upon information and belief, is a software consulting and services firm. AMX is an Idaho corporation with its principal place of business in Idaho Falls, Idaho.

2

## Facts Concerning All Claims For Relief

**A.    The Underlying Action.**

9.    In October 2004, CA commenced an action (the "Action") in this court to enforce two software licensing agreements with AMX.

10.    These license agreements had allowed AMX to develop and distribute a computer software package incorporating certain CA software products in consideration for the payment of certain license fees to CA.

11.    In the Action, CA alleged AMX failed to pay CA certain fees required under the licensing agreements.

12.    In July 2005, the parties settled the Action pursuant to a written Negotiated Settlement Agreement. *See* Ex. 1.

13.    On October 24, 2005, the Court entered a Stipulation and Order of Dismissal (the "Order"), dismissing the Action pursuant to the terms of the Negotiated Settlement Agreement. *See* Ex. 2.

**B.    The Negotiated Settlement Agreement.**

14.    The Negotiated Settlement Agreement provides, among other things, that in consideration for AMX's timely payment to CA of four quarterly installments of twenty-five thousand ($25,000.00) dollars, AMX was permitted to continue to use certain CA software products (the "Permitted Products") until no later than June 1, 2006.

15.    AMX was required to return the Permitted Products to CA on or before June 1, 2006, and to certify to CA that AMX had (a) stopped all use of the Permitted Products; (b) deleted all copies of the Permitted Products from all computer libraries and storage devices; and

3

(c) returned to CA all electronic media, documentation and other items relating to the Permitted Products.

16.    The Negotiated Settlement Agreement provided AMX with the option to extend its retention and use of the Permitted Products until no later than September 1, 2006, by tendering an additional payment of twenty-five thousand ($25,000.00) dollars on or before May 15, 2006 (the "Extension Payment").

17.    In breach of the Negotiated Settlement Agreement, AMX refused to return the Permitted Products to CA by June 1, 2006, and continued to use some or all of the products without CA's permission and without payment to CA.

18.    On or about April 16, 2007, after repeated demands by CA that AMX discontinue its use of the Permitted Products, AMX made the Extension Payment to CA.

19.    AMX's use of the Permitted Products after September 1, 2006 was without CA's permission and without payment to CA.

C.    The Injunction.

20.    On or about May 31, 2007, CA moved to enforce the Negotiated Settlement Agreement and to enjoin AMX from continuing to use the Permitted Products in violation of the Negotiated Settlement Agreement.

21.    By Decision and Order dated September 19, 2007, the Hon. Loretta Taylor Swain found that AMX had violated the Negotiated Settlement Agreement by continuing to use the Permitted Products and failing to return them to CA. Judge Swain accordingly granted CA an injunction, providing as follows:

> Defendant AMX shall be barred from all use of the "Permitted Products" (as defined by Paragraph 4.c of the Settlement Agreement) within fifteen (15) days of entry of this order, and Defendant AMX shall delete all copies of the Permitted Products

4

from all computer libraries and storage devices within fifteen (15) days of the entry of this order.

A copy of the Order is annexed hereto as Exhibit "3."

22.    On or about October 2, 2007, AMX filed a certification in the Action stating it was no longer using the Permitted Products. It, however, returned no materials to CA.

### FIRST CLAIM FOR RELIEF

#### (Breach of Contract: Money Damages)

23.    CA repeats and realleges each and every allegation contained in paragraph "1" through "22" as if fully set forth herein.

24.    AMX failed to return the Permitted Products to CA on or before September 1, 2006.

25.    AMX used, or had the ability to use, the Permitted Products continuously from September 1, 2006 to October 2, 2007 ("Unauthorized Use Period").

26.    AMX did not make any payment to CA for its use of, or its ability to use, the Permitted Products during the Unauthorized Use Period.

27.    AMX's retention and use of the Permitted Products during the Unauthorized Use Period is a breach of the Negotiated Settlement Agreement.

28.    CA has been damaged by AMX's retention and use of the Permitted Products in an amount to be determined at trial, but not less than $260,000, constituting the retail value for the use of, or the right to use, the Permitted Products during the Unauthorized Use Period.

29.    By reason of the foregoing, CA is entitled to a money judgment against AMX in an amount to be determined at trial, but not less than $245,000, together with interest.

## SECOND CLAIM FOR RELIEF

### (Quantum Meruit)

30.     CA repeats and realleges each and every allegation contained in paragraph "1"

through "22" and "24" through "26" as if fully set forth herein.

31.     AMX has been unjustly enriched by its use of, or retention of its ability to use, the

Permitted Products during the Unauthorized Use Period without payment to CA.

32.     The retail value for the use of, or the right to use, the Permitted Products during

the Unauthorized Use Period is not less than $245,000.

33.     By reason of the forgoing, CA is entitled to a money judgment against AMX in an

amount to be determined at trial, but not less than $245,000, with interest.

**WHEREFORE**, plaintiff CA, Inc. demands judgment against defendant AMX

International, Inc., as follows:

a.     On the First Claim for Relief, a money judgment in an amount to be determined at

trial, but not less than $245,000, plus accrued interest;

b.     On the Second Claim for Relief, a money judgment in an amount to be

determined at trial, but not less than $245,000; and

c.     Such other and further relief to CA as the Court may deem appropriate.

Dated: Uniondale, New York
       November 1, 2007

                                        FARRELL FRITZ, P.C.

                                        By: _____
                                           John P. McEntee
                                           David A. Scheffel
                                           *Attorneys for Plaintiff*
                                           1320 RexCorp Plaza
                                           Uniondale, New York 11556
                                           (516) 227-0700

6

**Exhibit 1**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------------X

COMPUTER ASSOCIATES INTERNATIONAL, INC.,

                        Plaintiff,

      - against -

AMX INTERNATIONAL, INC.,

                        Defendant.

-------------------------------------------------------------------X

04 CV 9134 (LTS) (KNF).

## NEGOTIATED SETTLEMENT AGREEMENT

**WHEREAS,** plaintiff Computer Associates International, Inc., which is defined for purposes of this Agreement to include any present or former parent corporations, subsidiaries, divisions, successors, creditors, assigns, officers, directors, agents, representatives or employees thereof (collectively referred to as "Plaintiff"); and defendant AMX International, Inc., which is defined for purposes of this Agreement to include any present or former, parent corporations, subsidiaries, divisions, affiliates, successors, creditors, assigns, partners, directors, agents, representatives or employees thereof (collectively referred to as "Defendant"), desire to resolve, settle and agree to dismiss with prejudice all claims and all issues raised in or by Plaintiff's Complaint and Defendant's Counterclaims, without further litigation or adjudication; and

**WHEREAS,** Plaintiff and Defendant understand and agree that each of them denies each and every allegation of wrongdoing, including, but not limited to, the allegations and statements contained in the pleadings; and

**WHEREAS,** Plaintiff and Defendant understand and agree that neither the making of this Agreement nor anything contained herein shall be construed or considered in any way to be an admission by any party of guilt or noncompliance with federal, state, or local statute, order,

regulation or ordinance, public policy, tort (whether intentional, negligent or otherwise), contract (whether oral or written, express or implied), common law, or of any other wrongdoing whatsoever; and

WHEREAS, this action shall be dismissed in its entirety and with prejudice by the Court upon Plaintiff's and Defendant' stipulation:

NOW, THEREFORE, IT IS STIPULATED AND AGREED BY AND BETWEEN THE PARTIES THAT:

1.    **Execution**

The terms of this Agreement are the product of mutual negotiation and compromise between Plaintiff and Defendant. Plaintiff and Defendant each confirm that they have been represented by counsel throughout this action, that counsel has fully explained the effect and terms of this Agreement, and that they each freely and knowingly enter into this Agreement intending to waive, settle and release all claims raised in the Complaint and in the Counterclaims. The parties acknowledge that they each may hereafter discover facts different from or in addition to those known or now believed to be true with respect to the matters released or described in this Agreement, and agree that the waivers, releases and agreements contained herein shall be and will remain effective in all respects notwithstanding any later discovery of any such different or additional facts. Each of the parties assumes any and all risk of any mistake in connection with the true facts involved in the matters, disputes, or controversies described in this Agreement or with regard to any facts that are now unknown to any or all of the parties.

2.    **Waiver and General Release of Claims**

In exchange for the consideration provided by Defendant in this Agreement, the sufficiency of which is hereby acknowledged, and except as to any action or proceeding to enforce the terms of this Agreement, Plaintiff (a) waives its right to commence, maintain, prosecute, or participate in any action, charge, complaint or proceeding (on its own behalf or on behalf of any other person or entity), whether individually or as a member of any alleged class of persons, in any court, or before any administrative or investigate agency (whether public, quasi-public or private) against Defendant, and each of them, and (b) releases Defendant from any and all claims and causes of action it has against Defendant arising out of the purchase, service, maintenance and licensing agreements which form the basis of the Plaintiff's claims.

In exchange for the consideration provided by Plaintiff in this Agreement, the sufficiency of which is hereby acknowledged, and except as to any action or proceeding to enforce the terms of this Agreement, Defendant (a) waives its right to commence, maintain, prosecute, or participate in any action, charge, complaint or proceeding (on their own behalf or on behalf of any other person or entity), whether individually or as a member of any alleged class of persons, in any court, or before any administrative or investigate agency (whether public, quasi-public or private), against Plaintiff, and (b) releases Plaintiff from any and all claims and causes of action against Plaintiff from the beginning of the world to the date of this Agreement.

3.    **Commitments**

In addition to the waiver and release of claims in paragraph "2" above, and in exchange for the promises made by the parties in paragraph "4" below, the parties agree they will each execute all documents and such supplemental, further or modifying documents, including, without limitation, the Stipulation For Entry of an Order of Final Dismissal With Prejudice

3

(annexed hereto as Exhibit A), needed to settle, dismiss and withdraw, with prejudice, any and all complaints, suits, actions, charges, claims or proceedings relating to all claims and counterclaims asserted in this Action.

4.    <u>Consideration</u>

In exchange for Plaintiff's release and waiver of claims and the discontinuance with prejudice of this Action, Defendant shall:

a.    Pay to Plaintiff the total sum of $100,000, payable in four equal installments of $25,000 on August 1, 2005, November 1, 2005, February 1, 2006, and May 1, 2006;

b.    Deliver to Plaintiff, within five business days of the discontinuance of this action, the following products, including all documentation relating to the following products (collectively, the "Surrendered Products"):

| Product Name |
| --- |
| AllFusion® Gen 1-10 Developers License for COOL:Qwik MULTI-PLATFORM |
| AllFusion® Gen Implementation Toolset Option MVS |
| AllFusion® Gen Report Composer from CANAM Software MULTI-PLATFORM |
| CA Common Services MVS |
| AllFusion® Gen Proxy Programming Interface Option for Java MULTI-PLATFORM |

together with a certification to Plaintiff stating that Defendant has stopped all use of the Surrendered Products, has deleted all copies of the Surrendered Products from all computer libraries and storage devices, and has returned to Defendant all electronic media, documentation, and other items relating to the Surrendered Products, in the form annexed hereto as Exhibit "B;"

c.    Deliver to Plaintiff, on or before June 1, 2006 (the "Final Surrender Date"), the following products, including all documentation relating to the following products (collectively, the "Permitted Products"):

| Product Name |
| --- |
| AllFusion® Gen Encyclopedia Server Option IBM AIX |
| AllFusion® Gen Implementation Toolset Client/Serve WINDOWS NT |

4

AllFusion® Gen IT (C/S) IBM AIX
AllFusion® Gen Workstation Analyst Toolset WINDOWS-ALL
AllFusion® Gen Workstation Construction Toolset WINDOWS-ALL
AllFusion® Gen Workstation Cross Generation Option to UNIX MULTI-PLATFORM
AllFusion® Gen Workstation Cross Generation Option to Windows NT/2000 MULTI-PLATFORM
AllFusion® Gen Workstation Developer Toolset Option WINDOWS-ALL
AllFusion® Gen Communication Base Manager Option MULTI-PLATFORM
AllFusion® Gen Encyclopedia Construction Server IBM AIX
AllFusion® Gen Encyclopedia Cross Generation Option to UNIX MULTI-PLATFORM
AllFusion® Gen Encyclopedia Cross Generation Option to Windows NT/2000 MULTI-PLATFORM
AllFusion® Gen Middleware TCP/IP Option MULTI-PLATFORM

together with a certification to Plaintiff stating that Defendant has stopped all use of the Permitted Products, has deleted all copies of the Permitted Products from all computer libraries and storage devices, and has returned to Defendant all electronic media, documentation, and other items relating to the Permitted Products, in the form annexed hereto as Exhibit "B," provided, however, that Defendant has the option to extend to extend the Final Surrender Date to September 1, 2006 provided it pays to Plaintiff the sum of $25,000 on or before May 15, 2006.

5.     **Disclaimer of Warranty**

    **PLAINTIFF AND DEFENDANT AGREE THAT DEFENDANT'S USE OF THE PERMITTED PRODUCTS IS ON AN "AS IS" BASIS, THAT PLAINTIFF DISCLAIMS ALL WARRANTIES, EXPRESS OR IMPLIED, INCLUDING WITHOUT LIMITATION WARRANTIES OF MERCHANTABILITY AND FITNESS FOR A PARTICULAR PURPOSE, AND THAT PLAINTIFF DISCLAIMS ANY OBLIGATION TO SUPPORT OR PROVIDE TECHNICAL ASSISTANCE FOR THE PERMITTED PRODUCTS. PLAINTIFF AND DEFENDANT FURTHER AGREE THAT DEFENDANT SHALL NEITHER REQUEST NOR RECEIVE ANY MAINTENANCE SERVICES IN CONNECTION WITH THE PERMITTED PRODUCTS (INCLUDING, BUT NOT**

LIMITED TO, TELEPHONIC SUPPORT, "BUG" FIXES, PATCHES, UPDATES, AND NEW RELEASES).

6.    **Injunction; Money Judgment**

Plaintiff is entitled, in the event that Defendant defaults in its obligations under paragraph 4.b of this Agreement, after three days notice to Defendant of its default, to the immediate return of the Surrendered Products and to the entry of a permanent injunction that bars Defendant from all use of the Surrendered Products and directs it to delete all copies of the Surrendered Products from all computer libraries and storage devices.

Plaintiff is entitled, in the event that Defendant defaults in its obligations under paragraph 4.c of this Agreement, after three days notice to Defendant of its default, to the immediate return of the Permitted Products and to the entry of a permanent injunction that bars Defendant from all use of the Permitted Products and directs it to delete all copies of the Permitted Products from all computer libraries and storage devices.

Plaintiff is entitled, in the event that Defendant defaults in its obligations under paragraph 4.a of this Agreement to timely pay the installments due Plaintiff, after three days notice to Defendant of its default, to a money judgment in the amount of $592,784.65, less any amounts paid by Defendant under this Agreement, and to the entry of a permanent injunction that bars Defendant from all use of the Permitted Products and the Surrendered Products and directs it to delete all copies of the Permitted Products and the Surrendered Products from all computer libraries and storage devices.

7.    **Right to Inspect**

Plaintiff may audit, with five (5) day's prior written notice, Defendant's available records and information systems to confirm the accuracy of the certifications required by paragraphs 4.b

and 4.c of this Agreement. Plaintiff shall bear the expense of an audit with the exception of instances where Defendant is found, through such an audit, to be in violation of the certifications. In such instances, Defendant will be invoiced for, and shall promptly pay, all reasonable time, travel and material costs associated with the audit. Audits shall be conducted during regular business hours at Defendant's facilities and shall not unreasonably interfere with Defendant's business. Audits shall be conducted no more than twice in any twelve-month period. The right to audit will expire two years after Defendant's delivery of the certification for the Permitted Products, as provided for in paragraph 4.c of this Agreement.

### 8.    Severability and Modification

Should any provision of this Agreement or the attachments hereto be declared illegal or unenforceable by any court, administrative agency or other entity and cannot be interpreted or modified to be enforceable (which the parties authorize said court, administrative agency or other entity to do), such provision shall immediately become null and void, leaving the remainder of this Agreement in full force and effect.

### 9.    Section Headings

Section headings are used herein for convenience of reference only and do not affect the meaning of any provision of this Agreement.

### 10.    Entire Agreement

This Agreement, which incorporates as covenants the representations and clauses in the introductory "Whereas" clauses, represents the complete understanding among Plaintiff and Defendant about the matters set forth in this Agreement and shall be interpreted under New York law without regard to New York's conflict or choice of law provisions. Any action or proceeding arising under or relating to this Agreement shall be brought in a federal or state court

7

located in New York County, New York. No other promises or agreements shall be binding or shall modify this Agreement. This Agreement can be modified only by a written document signed by Plaintiff and by Defendant (or their legally designated representatives), which recites the specific intent to modify this Agreement.

11.    **Notice**

Except as otherwise specified in the Agreement, all notices, requests, approvals, consents and other communications required or permitted under this Agreement shall be in writing and shall be personally delivered or sent by (i) first class U.S. mail, registered or certified, return receipt requested, postage pre-paid; or (ii) U.S. express mail, or other, similar overnight courier service to the address specified below. Notices shall be deemed given on the day actually served by the party to whom the notice is addressed.

| | |
|---|---|
| In the case of Plaintiff: | Computer Associates International, Inc.<br>One Computer Associate Plaza<br>Islandia, NY 11749<br>Attn: General Counsel |
| In the case of Defendant: | AMX International Inc.<br>c/o Michael D. Gaffney<br>Beard St. Clair<br>2105 Coronado<br>Idaho Falls, ID 83404 |

12.    **Continuing Jurisdiction**

The parties consent to the continuing jurisdiction of the Hon. Loretta Taylor Swain to enforce the terms of this Agreement.

THE TERMS OF THIS AGREEMENT, INCLUDING THE WAIVERS AND RELEASES, ARE THE PRODUCT OF MUTUAL NEGOTIATION AND COMPROMISE BETWEEN PLAINTIFF AND DEFENDANT. THE PARTIES HAVE

8

**READ AND FULLY CONSIDERED THIS AGREEMENT AND MUTUALLY DESIRE**

**TO ENTER INTO THIS AGREEMENT.**

COMPUTER ASSOCIATES INTERNATIONAL,
INC.

By:    Alexander G. Arato, Esq.
        Vice President, Senior Counsel

STATE OF NEW YORK   )
                       ) ss.:
COUNTY OF SUFFOLK   )

    On this 11ᵗʰ day of July, 2005, before me personally appeared Alexander G. Arato of Computer Associates International, Inc., personally known to me known or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he executed the same in his capacity and that by his signature on the instrument, the individual, or the person upon behalf of which the individual acted, executed the instrument.

**BARBARA BOLAND**
Notary Public, State of New York
No.01BO601047
Qualified in Suffolk County
Certified in Nassau County
Commission Expires July 13, 2006

Notary Public

AMX INTERNATIONAL, INC.

By: Jay Price, President

STATE OF IDAHO    )
                 ) ss.:
COUNTY OF Bonneville )

    On this 7 day of July, 2005, before me personally appeared Jay Price of AMX International, Inc., personally known to me known or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he executed the same in his capacity and that by his signature on the instrument, the individual, or the person upon behalf of which the individual acted, executed the instrument.

Notary Public
Residing at · Rexburg. ID
My Commission expires : 6-21-10

FFDOCS1\631568.02

9

*Exhibit 2*

: 10/24/05

```
┌─────────────────────────────────────┐
│ USDC SDNY                            │
│ DOCUMENT                     Swan Si │
│ ELECTRONICALLY  FILED                │
│ DOC #:                               │
│ DATE FILED:  10/24/05                │
└─────────────────────────────────────┘
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------- x
COMPUTER ASSOCIATES INTERNATIONAL, INC.,

                        Plaintiff,                    2004-CV-09134 (LTS)(KNF)

        -against-                                     **STIPULATION AND ORDER**
                                                      **OF DISMISSAL**

AMX INTERNATIONAL, INC.,

                        Defendant.
-------------------------------------------- x

        IT IS HEREBY STIPULATED AND AGREED, by and between the plaintiff and

defendant, that the above captioned action should be dismissed in its entirety, with prejudice, and

with no award of attorneys' fees, costs or disbursements to any party, pursuant to a Negotiated

Settlement Agreement between the parties. The parties further stipulate and agree that the Court

shall retain jurisdiction to enforce the terms of the Negotiated Settlement Agreement.

LEHMAN & ELLEN LLP                          FARRELL FRITZ, P.C.

By:  Scott D. Stechman (SS/Po3)            By:    John P. McEntee (JM4450)
Attorneys for Defendant                          David A. Scheffel (DS4035)
50 Charles Lindbergh Blvd.                  Attorneys for Plaintiff
Uniondale, NY 11553-3612                    EAB Plaza
(516) 222-0888                              Uniondale, New York 11556
                                            (516) 227-0700
BEARD ST. CLAIR GAFFNEY
McNAMARA CALDER PA

By:  Michael D. Gaffney
Attorneys for Defendant
2105 Coronado Street
Idaho Falls, Idaho 83404-7495
(208) 523-5171

                        SO ORDERED this 21 day of October
                        2005 in New York, New York

                        Hon. Laura Taylor Swain

**Exhibit 3**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------x

COMPUTER ASSOCIATES INTERNATIONAL, INC.,

      Plaintiff,

    -v-                         No. 04 Civ. 9134 (LTS)(KNF)

AMX INTERNATIONAL, INC.,

      Defendant.

------------------------------------------------------------x

### ORDER

    This case comes before the Court on a motion filed by CA, Inc., formerly known as Computer Associates International, Inc. ("CA" or "Plaintiff"). On May 31, 2007, CA moved for this Court to enforce a negotiated settlement agreement (the "Settlement Agreement") previously entered into by CA and Defendant AMX International, Inc. ("AMX" or "Defendant"). For the reasons explained below, the Court grants CA's motion and grants CA permanent injunctive relief.

    CA commenced the above-captioned action in October 2004, alleging that AMX had failed to pay certain licensing fees in connection with contracts entered into by both parties. In July 2005, CA and AMX resolved their dispute pursuant to terms set forth in the Settlement Agreement. (Settlement Agreement, annexed to May 30, 2007, Declaration of John P. McEntee as Ex. B.) Paragraph 4.c. of the Settlement Agreement required Defendant to:

> Deliver to Plaintiff, on or before June 1, 2006 (the "Final Surrender Date"), the following products, including all documentation relating to the following products (collectively, the "Permitted Products"): [listing products] together with a certification to Plaintiff stating that Defendant has stopped all use of the Permitted Products, has deleted all copies of the Permitted Products from all computer libraries and storage devices, and has returned to Defendant [sic] all electronic media, documentation, and other items relating to the Permitted Products, . . . provided, however, that Defendant has the option to extend to extend [sic] the Final Surrender Date to September 1,

2006[,] provided it pays to Plaintiff the sum of $25,000 on or before May 15, 2006.

CA asserts, and AMX does not deny, that as of June 1, 2006, AMX had not delivered the Permitted Products to Plaintiff, provided the required certification, or paid the $25,000 extension fee. John McEntee, counsel for CA, sent a letter to Michael D. Gaffney, counsel for AMX, on October 5, 2006, noting that AMX was in default of the Settlement Agreement. (Letter from McEntee to Gaffney, dated October 5, 2006, annexed to McEntee Decl. as Ex. C.) On October 19, 2006, Gaffney admitted in response:

> The "permitted products" identified in paragraph 4c apparently have not been returned due to miscommunication between [Jay] Price [the president of AMX] and the employees directed to return said items. I assure you that this was simply an oversight .... I explained to Mr. Price that the final surrender date could be extended to September 1, 2006 [by a] payment of $25,000; however, I would ask that your client waive this payment ....

(Letter from Gaffney to McEntee, dated October 19, 2006, annexed to McEntee Decl. as Ex. D.) On March 27, 2007, McEntee sent another letter to Gaffney noting that AMX had not cured its breach of the Settlement Agreement. (Letter from McEntee to Gaffney dated March 27, 2007, annexed to McEntee Decl. as Ex. F.) AMX paid CA the $25,000 extension fee on April 16, 2007, but its accompanying letter did not address the failure to deliver the Permitted Products. (Letter from Gaffney to McEntee dated April 16, 2007, annexed to McEntee Decl. as Ex. I.) On May 9, 2007, McEntee again noted that AMX still had not returned the Permitted Products or provided the required certification. (Letter from McEntee to Gaffney dated May 9, 2007, annexed to McEntee Decl. as Ex. J.) This motion soon followed.

Paragraph 6 of the Settlement Agreement provided that in the event of AMX's default under its obligations under Paragraph 4.c., after three days of giving Defendant notice of its default, Plaintiff would be entitled "to the entry of a permanent injunction that bars Defendant from all use of the Permitted Products and directs it to delete all copies of the Permitted Products from all computer

libraries and storage devices."

This Court has jurisdiction to enforce the Settlement Agreement. On October 21,
2005, this Court so ordered a stipulation between the parties consenting to this Court's continued
jurisdiction to enforce the terms of the Settlement Agreement. See Kokkonen v. Guardian Life Ins.
Co. of Am., 511 U.S. 375, 381-82 (1994).

AMX does not dispute its failure to perform under the terms of the Settlement
Agreement. Rather, AMX argues that its non-performance is excused because: 1) CA breached the
Settlement Agreement first; 2) CA breached the Settlement Agreement's implied covenant of good
faith and fair dealing; and/or 3) CA has frustrated the purpose of the Settlement Agreement. In
support of these arguments, AMX proffers the following facts:

On July 31, 2000, CA licensed Cool:Gen, a software tool, to AMX for a term of five
years. AMX used Cool:Gen in connection with Utiligy, one of AMX's applications used by AMX's
clients, and AMX provided regular maintenance services for these clients in connection with their use
of Utiligy. After the instant litigation was dismissed pursuant to the Settlement Agreement in July
2005, AMX allegedly made its best efforts to transition all existing Utiligy clients off of Cool:Gen,
one of the "Permitted Products" listed in the Settlement Agreement.[1] AMX proffers that, due to the
complexities of the software and Utiligy's total reliance on a now obsolete and unsupported Cool:Gen
version 6.0, AMX was unable to transfer three of AMX's existing Utiligy clients off of Cool:Gen by
the Settlement Agreement deadline. As a result, AMX approached CA numerous times in March and

---

[1]    The actual term "Cool:Gen" is not found in the exact terms of the relatively technical
listing of "Permitted Products" found in Paragraph 4.c. However, as AMX refers to
"Cool:Gen" as being covered under the terms of the Settlement Agreement and CA
does not dispute AMX's use of that reference, the Court construes "Cool:Gen" to be
one of the "Permitted Products" and adopts the "Cool:Gen" nomenclature for the sake
of simplicity.

April 2007 (several months after the June 1, 2006, deadline) to discuss the possibility of licensing the Cool:Gen tool set. In response, after being alternatively receptive and non-responsive to AMX's entreaties over the course of several weeks, CA offered to sell a limited license to AMX, but for an annual fee several times the amount of other license fees that CA had offered to other parties for the same product. Having been unable to obtain a license from CA at a desired price, AMX sought to enter into negotiations with third parties who had valid Cool:Gen licenses in order to eventually assign AMX's maintenance responsibilities to these third parties. AMX is presently concerned that CA will "retaliate" against these third parties if they agree to assume AMX's maintenance responsibilities. AMX alleges that these negotiations cannot proceed unless CA promises that it will not retaliate.

Based on these proffered facts, AMX argues that CA's actions constituted a breach or anticipatory breach of the Settlement Agreement, thereby excusing AMX's own non-performance. However, even assuming all the proffered facts to be true, AMX does not cite, and the Court cannot find, a single provision of the Settlement Agreement that would be breached by any of the above actions. There is no mention of AMX's clients or any requirement that CA promise not to "retaliate" against various third parties. Therefore, AMX's failure to perform under the Settlement Agreement is not excused on this ground.

AMX argues, in the alternative, that CA's actions breached the Settlement Agreement's implied covenant of good faith and fair dealing. A covenant of good faith and fair dealing is implied in every contract governed by New York law, and it precludes each party from engaging in conduct that will deprive the other party of the benefits of their agreement. Leberman v. John Blair & Co., 880 F.2d 1555, 1560 (2d Cir. 1989). In this case, however, AMX has fully received the benefits it was entitled to under the Settlement Agreement. AMX was freed from CA's

claims of unpaid license fees and the Settlement Agreement allowed AMX to use the Permitted

Products until a specified date.  CA has done nothing to prevent AMX from realizing these benefits.

AMX argues that CA has breached this implied covenant by preventing AMX from assigning its

maintenance responsibilities to a third party or acquiring a Cool:Gen license at a reasonable price, but

nothing in the Settlement Agreement could be read to entitle AMX to such benefits.  There is not a

single mention of third party clients, and the Settlement Agreement certainly does not entitle AMX to

the continued use of Cool:Gen on terms financially favorable to AMX when the Settlement

Agreement's explicit terms actually ensure AMX's discontinued use of Cool:Gen.  See Sabetay v.

Sterling Drug, Inc., 69 N.Y.2d 329, 335 (1987) ("No obligation can be implied, however, which

would be inconsistent with other terms of the contractual relationship").  Therefore, even if AMX's

proffers concerning CA's actions are true, there is no breach of the implied covenant of good faith

and fair dealing as a matter of law.

       Finally, AMX argues that CA's actions have frustrated the purpose of the agreement,

thereby excusing AMX's failure to perform.  As the Restatement (Second) of Contracts explains:

> Where, after a contract is made, a party's principal purpose is substantially frustrated
> without his fault by the occurrence of an event the non-occurrence of which was a
> basic assumption on which the contract was made, his remaining duties to render
> performance are discharged, unless the language or circumstances indicate the
> contrary.

Restatement (Second) of Contracts § 265 (1981).  See also Crown It Services, Inc. v. Koval-Olsen,

782 N.Y.S.2d 708, 711 (N.Y. App. Div. 1st Dep't 2004) (citing Restatement).  The doctrine is a

narrow one which does not apply unless the frustration is substantial.  Id. (citing Rockland Dev.

Assocs. v. Richlou Auto Body, Inc., 570 N.Y.S.2d 343, 343 (N.Y. App. Div. 2d Dep't 1991)).  AMX

asserts, without citing any supporting evidence, that one purpose under the Settlement Agreement

was to "prevent economic loss to innocent third parties."  (Opp'n at 12.)  AMX cites no cases to

support this proposition, and AMX does not cite a single provision in the Settlement Agreement that would serve as a basis for this conclusory proposition. Therefore, AMX has failed to excuse its non-performance under the frustration of purpose doctrine.

For the foregoing reasons, CA's motion to enforce the Settlement Agreement is granted. Accordingly, pursuant to Paragraph 6 of the Settlement Agreement, the Court hereby enters a permanent injunction as follows: Defendant AMX shall be barred from all use of the "Permitted Products" (as defined by Paragraph 4.c. of the Settlement Agreement) within fifteen (15) days of the entry of this order, and Defendant AMX shall delete all copies of the Permitted Products from all computer libraries and storage devices within fifteen (15) days of the entry of this order.

SO ORDERED.

Dated:    New York, New York
          September 4, 2007

                                    _____
                                    LAURA TAYLOR SWAIN
                                    United States District Judge

EXHIBIT "2"

Scott D. Stechman (SS-1803)
LEHMAN & EILEN LLP
50 Charles Lindbergh Blvd., Suite 505
Uniondale, New York 11553
(516) 222-0888

*Attorneys for Defendant AMX International, Inc.*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------X

CA, INC.,

                                **Plaintiff,**

          - against -

AMX INTERNATIONAL, INC.,

                              **Defendant.**

--------------------------------------------------------------X

Civil Action No. 07 CV 9799(LTS)

**ANSWER AND JURY DEMAND**

     Defendant AMX International, Inc. ("AMX"), by and through its counsel, Lehman & Eilen LLP, as and for its Answer to the Complaint of plaintiff CA, Inc. ("CA"), dated November 1, 2007 (the "Complaint"), alleges as follows:

     1.     Admits the allegations contained in paragraph "1" of the Complaint, except the first and last sentences of the paragraph. The first and last sentences of the paragraph set forth conclusions of law to which no response is required.

     2.     Denies the allegations contained in paragraph "2" of the Complaint.

     3.     Denies the allegations contained in paragraph "3" of the Complaint, and avers that the matter in controversy does not exceed $75,000.00, exclusive of interest and costs.

     4.     Denies the allegations contained in paragraph "4" of the Complaint, and avers that the Court does not have subject matter jurisdiction over this matter.

5. Denies the allegations contained in paragraph "5" of the Complaint, and avers the Court does not have ongoing jurisdiction over this matter insofar as the Negotiated Settlement Agreement dated July 11, 2005 (the "Settlement Agreement") has been fully enforced according to its terms. AMX respectfully refers the Court to the Settlement Agreement for its full and complete terms.

6. Denies the allegations contained in paragraph "6" of the Complaint, and avers that the Court does not have ongoing jurisdiction over this matter pursuant to the "So-Ordered" Stipulation and Order of Dismissal dated October 21, 2005 (the "So-Ordered" Stipulation and Order") insofar as the Settlement Agreement has been fully enforced according to its terms. AMX respectfully refers the Court to the "So Ordered" Stipulation and Order for its full and complete terms.

7. Denies having knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph "7" of the Complaint.

8. Admits the allegations contained in paragraph "8" of the Complaint.

9. Admits the allegations contained in paragraph "9" of the Complaint.

10. Admits the allegations contained in paragraph "10" of the Complaint.

11. Admits the allegations contained in paragraph "11" of the Complaint.

12. Admits the allegations contained in paragraph "12" of the Complaint.

13. Admits the allegations contained in paragraph "13" of the Complaint.

14. Admits the allegations contained in paragraph "14" of the Complaint.

15. Admits the allegations contained in paragraph "15" of the Complaint.

16. Admits the allegations contained in paragraph "16" of the Complaint.

17. Admits the allegations contained in paragraph "17" of the Complaint.

18.     Admits the allegations contained in paragraph "18" of the Complaint.

19.     Admits the allegations contained in paragraph "19" of the Complaint.

20.     Admits the allegations contained in paragraph "20" of the Complaint.

21.     Admits the allegations contained in paragraph "21" of the Complaint.

22.     Admits the allegations contained in paragraph "22" of the Complaint.

### Responding to the First Claim for Relief

23.     Defendant repeats and realleges the allegations contained in paragraphs "1" through "22" above, as if fully set forth herein at length.

24.     Admits the allegations contained in paragraph "24" of the Complaint.

25.     Admits the allegations contained in paragraph "25" of the Complaint.

26.     Admits the allegations contained in paragraph "26" of the Complaint.

27.     Admits the allegations contained in paragraph "27" of the Complaint.

28.     Denies the allegations contained in paragraph "28" of the Complaint.

29.     Denies the allegations contained in paragraph "29" of the Complaint.

### Responding to the Second Claim for Relief

30.     Defendant repeats and realleges the allegations contained in paragraphs "1" through "29" above, as if fully set forth herein at length.

31.     Denies the allegations contained in paragraph "31" of the Complaint.

32.     Denies the allegations contained in paragraph "32" of the Complaint.

33.     Denies the allegations contained in paragraph "33" of the Complaint.

### AFFIRMATIVE DEFENSES

### First Affirmative Defense

34.     The Complaint fails to state a claim upon which relief can be granted.

### Second Affirmative Defense

35.    Plaintiff's claims are barred by the doctrines of *res judicata,* collateral estoppel and Plaintiff's prior election of remedies.

### Third Affirmative Defense

36.    Plaintiff's claims are barred by the doctrine of waiver.

### Fourth Affirmative Defense

37.    Plaintiff's claims are barred by laches.

### Fifth Affirmative Defense

38.    Plaintiff's claims are barred by its unclean hands.

### Sixth Affirmative Defense

39.    Plaintiff's claims are barred by the doctrine of estoppel.

### Seventh Affirmative Defense

40.    Plaintiff's claims are barred because it failed to mitigate its damages, if any.

### Eighth Affirmative Defense

41.    Plaintiff's claims are barred because it has not suffered any damages.

### Nine Affirmative Defense

42.    The Settlement Agreement contains no agreement regarding payment for use of the CA software products in violation of Sections 4b or 4c thereof.  Therefore, AMX's failure to pay for the use of the software products is not a breach of the Settlement Agreement.

### Tenth Affirmative Defense

43.    The Settlement Agreement provides the exclusive remedies for breach.  These remedies provide for injunctive relief for violation or improper use of the CA software products. Monetary damages are not permitted for any misuse of the software products.

### Eleventh Affirmative Defense

44.    The misuse of the CA software products under the Settlement Agreement has been the subject of prior court action. An injunction has been issued pursuant to the Settlement Agreement and AMX has fully complied therewith. All issues related to enforcement of Sections 4b and 4c of the Settlement Agreement are *res judicata* or are barred by collateral estoppel.

### Twelfth Affirmative Defense

45.    In the prior action between the same parties, no money damages were awarded by the Court and no appeal has been taken. Accordingly, the right to damages under the Settlement Agreement, if any, has been waived and subsumed by the previous decision of the Court.

### Thirteenth Affirmative Defense

46.    The Settlement Agreement has been fully enforced in accordance with its terms so there is no ongoing jurisdiction for this Court.

### Fourteenth Affirmative Defense

47.    AMX received no economic benefit from the use of the CA software products that were allegedly used without permission from CA after September 1, 2006.

### Fifteenth Affirmative Defense

48.    No benefit has been conferred because AMX has not been allowed to license CA's software products on the same basis as other licensees, and AMX has been required to pay licensed users of the CA Cool:Gen product to service AMX clients. AMX does not bill its clients for any services provided through it to licensed Cool:Gen users.

5

**WHEREFORE**, defendant AMX International, Inc. demands judgment:

      (a)     dismissing the Complaint in its entirety;

      (b)     awarding it the reasonable attorneys' fees, costs and disbursements of

defending this action; and

      (c)     granting such other and further relief as the Court deems just and proper.

**Jury Demand**

Defendant respectfully requests trial by jury on all issues so triable.

Dated: Uniondale, New York
       November 28, 2007

                               LEHMAN & EILEN LLP

                               By: _____

                                Scott D. Stechman (SS-1803)
                              50 Charles Lindbergh Blvd. - Suite 505
                              Uniondale, New York 11553
                              (516) 222-0888

                              *Attorneys for Defendant*
                              *AMX International, Inc.*

                              Michael D. Gaffney, Esq.
                              Winston V. Beard, Esq.
                              BEARD ST. CLAIR GAFFNEY
                              2105 Coronado Street
                              Idaho Falls, Idaho 83404
                              (208) 557-5203

                              *Counsel to Defendant*
                              *AMX International, Inc.*

TO:   John P. McEntee, Esq.
       FARRELL FRITZ, P.C.
       1320 RexCorp Plaza
       Uniondale, New York 11556-0120
       (516) 227-0700

       *Attorneys for Plaintiff*
       *CA, Inc.*

6

EXHIBIT "3"

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------x

COMPUTER ASSOCIATES INTERNATIONAL, INC.,

       Plaintiff,

   -v-                                 No. 04 Civ. 9134 (LTS)(KNF)

AMX INTERNATIONAL, INC.,

       Defendant.

------------------------------------------------------x

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: SEP 1 9 2007

## ORDER

       This case comes before the Court on a motion filed by CA, Inc., formerly known as

Computer Associates International, Inc. ("CA" or "Plaintiff"). On May 31, 2007, CA moved for this

Court to enforce a negotiated settlement agreement (the "Settlement Agreement") previously entered

into by CA and Defendant AMX International, Inc. ("AMX" or "Defendant"). For the reasons

explained below, the Court grants CA's motion and grants CA permanent injunctive relief.

       CA commenced the above-captioned action in October 2004, alleging that AMX had

failed to pay certain licensing fees in connection with contracts entered into by both parties. In July

2005, CA and AMX resolved their dispute pursuant to terms set forth in the Settlement Agreement.

(Settlement Agreement, annexed to May 30, 2007, Declaration of John P. McEntee as Ex. B.)

Paragraph 4.c. of the Settlement Agreement required Defendant to:

> Deliver to Plaintiff, on or before June 1, 2006 (the "Final Surrender Date"), the
> following products, including all documentation relating to the following products
> (collectively, the "Permitted Products"): [listing products] together with a certification
> to Plaintiff stating that Defendant has stopped all use of the Permitted Products, has
> deleted all copies of the Permitted Products from all computer libraries and storage
> devices, and has returned to Defendant [sic] all electronic media, documentation, and
> other items relating to the Permitted Products, . . . provided, however, that Defendant
> has the option to extend to extend [sic] the Final Surrender Date to September 1,

2006[,] provided it pays to Plaintiff the sum of $25,000 on or before May 15, 2006.

CA asserts, and AMX does not deny, that as of June 1, 2006, AMX had not delivered

the Permitted Products to Plaintiff, provided the required certification, or paid the $25,000 extension

fee. John McEntee, counsel for CA, sent a letter to Michael D. Gaffney, counsel for AMX, on

October 5, 2006, noting that AMX was in default of the Settlement Agreement. (Letter from

McEntee to Gaffney, dated October 5, 2006, annexed to McEntee Decl. as Ex. C.) On October 19,

2006, Gaffney admitted in response:

> The "permitted products" identified in paragraph 4c apparently have not been returned
> due to miscommunication between [Jay] Price [the president of AMX] and the
> employees directed to return said items. I assure you that this was simply an oversight
> . . . . I explained to Mr. Price that the final surrender date could be extended to
> September 1, 2006 [by a] payment of $25,000; however, I would ask that your client
> waive this payment . . . .

(Letter from Gaffney to McEntee, dated October 19, 2006, annexed to McEntee Decl. as Ex. D.) On

March 27, 2007, McEntee sent another letter to Gaffney noting that AMX had not cured its breach of

the Settlement Agreement. (Letter from McEntee to Gaffney dated March 27, 2007, annexed to

McEntee Decl. as Ex. F.) AMX paid CA the $25,000 extension fee on April 16, 2007, but its

accompanying letter did not address the failure to deliver the Permitted Products. (Letter from

Gaffney to McEntee dated April 16, 2007, annexed to McEntee Decl. as Ex. I.) On May 9, 2007,

McEntee again noted that AMX still had not returned the Permitted Products or provided the required

certification. (Letter from McEntee to Gaffney dated May 9, 2007, annexed to McEntee Decl. as Ex.

J.) This motion soon followed.

Paragraph 6 of the Settlement Agreement provided that in the event of AMX's default

under its obligations under Paragraph 4.c., after three days of giving Defendant notice of its default,

Plaintiff would be entitled "to the entry of a permanent injunction that bars Defendant from all use of

the Permitted Products and directs it to delete all copies of the Permitted Products from all computer

libraries and storage devices."

This Court has jurisdiction to enforce the Settlement Agreement. On October 21, 2005, this Court so ordered a stipulation between the parties consenting to this Court's continued jurisdiction to enforce the terms of the Settlement Agreement. See Kokkonen v. Guardian Life Ins. Co. of Am., 511 U.S. 375, 381-82 (1994).

AMX does not dispute its failure to perform under the terms of the Settlement Agreement. Rather, AMX argues that its non-performance is excused because: 1) CA breached the Settlement Agreement first; 2) CA breached the Settlement Agreement's implied covenant of good faith and fair dealing; and/or 3) CA has frustrated the purpose of the Settlement Agreement. In support of these arguments, AMX proffers the following facts:

On July 31, 2000, CA licensed Cool:Gen, a software tool, to AMX for a term of five years. AMX used Cool:Gen in connection with Utiligy, one of AMX's applications used by AMX's clients, and AMX provided regular maintenance services for these clients in connection with their use of Utiligy. After the instant litigation was dismissed pursuant to the Settlement Agreement in July 2005, AMX allegedly made its best efforts to transition all existing Utiligy clients off of Cool:Gen, one of the "Permitted Products" listed in the Settlement Agreement.[1] AMX proffers that, due to the complexities of the software and Utiligy's total reliance on a now obsolete and unsupported Cool:Gen version 6.0, AMX was unable to transfer three of AMX's existing Utiligy clients off of Cool:Gen by the Settlement Agreement deadline. As a result, AMX approached CA numerous times in March and

---

[1]     The actual term "Cool:Gen" is not found in the exact terms of the relatively technical listing of "Permitted Products" found in Paragraph 4.c. However, as AMX refers to "Cool:Gen" as being covered under the terms of the Settlement Agreement and CA does not dispute AMX's use of that reference, the Court construes "Cool:Gen" to be one of the "Permitted Products" and adopts the "Cool:Gen" nomenclature for the sake of simplicity.

April 2007 (several months after the June 1, 2006, deadline) to discuss the possibility of licensing the Cool:Gen tool set. In response, after being alternatively receptive and non-responsive to AMX's entreaties over the course of several weeks, CA offered to sell a limited license to AMX, but for an annual fee several times the amount of other license fees that CA had offered to other parties for the same product. Having been unable to obtain a license from CA at a desired price, AMX sought to enter into negotiations with third parties who had valid Cool:Gen licenses in order to eventually assign AMX's maintenance responsibilities to these third parties. AMX is presently concerned that CA will "retaliate" against these third parties if they agree to assume AMX's maintenance responsibilities. AMX alleges that these negotiations cannot proceed unless CA promises that it will not retaliate.

Based on these proffered facts, AMX argues that CA's actions constituted a breach or anticipatory breach of the Settlement Agreement, thereby excusing AMX's own non-performance. However, even assuming all the proffered facts to be true, AMX does not cite, and the Court cannot find, a single provision of the Settlement Agreement that would be breached by any of the above actions. There is no mention of AMX's clients or any requirement that CA promise not to "retaliate" against various third parties. Therefore, AMX's failure to perform under the Settlement Agreement is not excused on this ground.

AMX argues, in the alternative, that CA's actions breached the Settlement Agreement's implied covenant of good faith and fair dealing. A covenant of good faith and fair dealing is implied in every contract governed by New York law, and it precludes each party from engaging in conduct that will deprive the other party of the benefits of their agreement. Leberman v. John Blair & Co., 880 F.2d 1555, 1560 (2d Cir. 1989). In this case, however, AMX has fully received the benefits it was entitled to under the Settlement Agreement. AMX was freed from CA's

claims of unpaid license fees and the Settlement Agreement allowed AMX to use the Permitted

Products until a specified date. CA has done nothing to prevent AMX from realizing these benefits.

AMX argues that CA has breached this implied covenant by preventing AMX from assigning its

maintenance responsibilities to a third party or acquiring a Cool:Gen license at a reasonable price, but

nothing in the Settlement Agreement could be read to entitle AMX to such benefits. There is not a

single mention of third party clients, and the Settlement Agreement certainly does not entitle AMX to

the underlined continued use of Cool:Gen on terms financially favorable to AMX when the Settlement

Agreement's explicit terms actually ensure AMX's discontinued use of Cool:Gen. See Sabetay v.

Sterling Drug, Inc., 69 N.Y.2d 329, 335 (1987) ("No obligation can be implied, however, which

would be inconsistent with other terms of the contractual relationship"). Therefore, even if AMX's

proffers concerning CA's actions are true, there is no breach of the implied covenant of good faith

and fair dealing as a matter of law.

Finally, AMX argues that CA's actions have frustrated the purpose of the agreement,

thereby excusing AMX's failure to perform. As the Restatement (Second) of Contracts explains:

> Where, after a contract is made, a party's principal purpose is substantially frustrated
> without his fault by the occurrence of an event the non-occurrence of which was a
> basic assumption on which the contract was made, his remaining duties to render
> performance are discharged, unless the language or circumstances indicate the
> contrary.

Restatement (Second) of Contracts § 265 (1981). See also Crown It Services, Inc. v. Koval-Olsen,

782 N.Y.S.2d 708, 711 (N.Y. App. Div. 1st Dep't 2004) (citing Restatement). The doctrine is a

narrow one which does not apply unless the frustration is substantial. Id. (citing Rockland Dev.

Assocs. v. Richlou Auto Body, Inc., 570 N.Y.S.2d 343, 343 (N.Y. App. Div. 2d Dep't 1991)). AMX

asserts, without citing any supporting evidence, that one purpose under the Settlement Agreement

was to "prevent economic loss to innocent third parties." (Opp'n at 12.) AMX cites no cases to

support this proposition, and AMX does not cite a single provision in the Settlement Agreement that would serve as a basis for this conclusory proposition. Therefore, AMX has failed to excuse its non-performance under the frustration of purpose doctrine.

For the foregoing reasons, CA's motion to enforce the Settlement Agreement is granted. Accordingly, pursuant to Paragraph 6 of the Settlement Agreement, the Court hereby enters a permanent injunction as follows: Defendant AMX shall be barred from all use of the "Permitted Products" (as defined by Paragraph 4.c. of the Settlement Agreement) within fifteen (15) days of the entry of this order, and Defendant AMX shall delete all copies of the Permitted Products from all computer libraries and storage devices within fifteen (15) days of the entry of this order.

SO ORDERED.

Dated:    New York, New York
        September 19, 2007

LAURA TAYLOR SWAIN
United States District Judge

PRICE AFFIDAVIT

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X

CA, INC.,

                         Plaintiff,

        - against -

AMX INTERNATIONAL, INC.,

                         Defendant.

-------------------------------------------------------------X

:  Civil Action No.
:   07 CV 9799 (LTS)(KNF)
:
:  **AFFIDAVIT OF**
:  **JAY PRICE IN SUPPORT**
:  **OF DEFENDANT'S CROSS-**
:  **MOTION FOR SUMMARY**
:  **JUDGMENT AND IN**
:  **OPPOSITION TO**
:  **PLAINTIFF'S MOTION**
:  **FOR PARTIAL SUMMARY**
:  **JUDGMENT**

STATE OF IDAHO           )
                      ) ss.:
COUNTY OF BONNEVILLE   )

     JAY PRICE having first been sworn, deposes and states:

    1.  I am over the age of eighteen, am competent to testify, and do so from personal knowledge.

    2.  I am the president of AMX International, Inc. ("AMX"). AMX is a party to the above action. I submit this affidavit in support of AMX's Cross-Motion for Summary Judgment and in opposition to plaintiff CA, Inc.'s ("CA") Motion for Summary Judgment on Count One of the Complaint.

    3.  In July 2005, I signed the Negotiated Settlement Agreement on behalf of AMX. Attached as Exhibit "A" is a copy of the executed Negotiated Settlement Agreement between the plaintiff, CA, and AMX.

    4.  AMX has complied with paragraph 4a of the Negotiated Settlement Agreement by paying the aggregate sum of $100,000.00 to CA as required by the Negotiated Settlement Agreement.

5.  AMX has also delivered to CA the products denoted as the "Surrendered Products" as required by paragraph 4b of the Negotiated Settlement Agreement. AMX has also provided certification that the Surrendered Products have been deleted off of all computer libraries and storage devices. All electronic media, documentation and other items relating to the Surrendered Products have been returned to CA.

6.  Pursuant to the Court's permanent injunction in the litigation captioned *Computer Associates Int'l, Inc. v AMX Int'l, Inc*, Case No. 04 Civ. 9134 (S.D.N.Y.) (LTS)(KNF), AMX has ceased using the products denoted as the "Permitted Products." AMX has submitted its certification that it has complied with the permanent injunction. Attached as Exhibit B is a copy of the certification provided by AMX that it has complied with the permanent injunction.

DATED: July 23, 2008

_____
Jay Price

Subscribed and sworn to before me this 23rd day of July, 2008.

_____
Notary Public for the State of Idaho
Residing at: Rexburg, ID
My commission expires: 4.21.2009
(SEAL)

BRENDA D. HOLLIST
NOTARY PUBLIC
STATE OF IDAHO

Affidavit of Jay Price **PAGE 2**

EXHIBIT "A"



UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
COMPUTER ASSOCIATES INTERNATIONAL, INC.,

                                  04 CV 9134 (LTS) (KNF).

           Plaintiff,

   - against -

AMX INTERNATIONAL, INC.,

           Defendant.
-------------------------------------------------------------------X

### NEGOTIATED SETTLEMENT AGREEMENT

      **WHEREAS**, plaintiff Computer Associates International, Inc., which is defined for

purposes of this Agreement to include any present or former parent corporations, subsidiaries,

divisions, successors, creditors, assigns, officers, directors, agents, representatives or employees

thereof (collectively referred to as "Plaintiff"); and defendant AMX International, Inc., which is

defined for purposes of this Agreement to include any present or former, parent corporations,

subsidiaries, divisions, affiliates, successors, creditors, assigns, partners, directors, agents,

representatives or employees thereof (collectively referred to as "Defendant"), desire to resolve,

settle and agree to dismiss with prejudice all claims and all issues raised in or by Plaintiff's

Complaint and Defendant's Counterclaims, without further litigation or adjudication; and

      **WHEREAS**, Plaintiff and Defendant understand and agree that each of them denies each

and every allegation of wrongdoing, including, but not limited to, the allegations and statements

contained in the pleadings; and

      **WHEREAS**, Plaintiff and Defendant understand and agree that neither the making of

this Agreement nor anything contained herein shall be construed or considered in any way to be

an admission by any party of guilt or noncompliance with federal, state, or local statute, order,

regulation or ordinance, public policy, tort (whether intentional, negligent or otherwise), contract (whether oral or written, express or implied), common law, or of any other wrongdoing whatsoever; and

**WHEREAS**, this action shall be dismissed in its entirety and with prejudice by the Court upon Plaintiff's and Defendant' stipulation:

**NOW, THEREFORE, IT IS STIPULATED AND AGREED BY AND BETWEEN THE PARTIES THAT:**

1.    **Execution**

The terms of this Agreement are the product of mutual negotiation and compromise between Plaintiff and Defendant.  Plaintiff and Defendant each confirm that they have been represented by counsel throughout this action, that counsel has fully explained the effect and terms of this Agreement, and that they each freely and knowingly enter into this Agreement intending to waive, settle and release all claims raised in the Complaint and in the Counterclaims.  The parties acknowledge that they each may hereafter discover facts different from or in addition to those known or now believed to be true with respect to the matters released or described in this Agreement, and agree that the waivers, releases and agreements contained herein shall be and will remain effective in all respects notwithstanding any later discovery of any such different or additional facts.  Each of the parties assumes any and all risk of any mistake in connection with the true facts involved in the matters, disputes, or controversies described in this Agreement or with regard to any facts that are now unknown to any or all of the parties.

2

2.    **Waiver and General Release of Claims**

In exchange for the consideration provided by Defendant in this Agreement, the sufficiency of which is hereby acknowledged, and except as to any action or proceeding to enforce the terms of this Agreement, Plaintiff (a) waives its right to commence, maintain, prosecute, or participate in any action, charge, complaint or proceeding (on its own behalf or on behalf of any other person or entity), whether individually or as a member of any alleged class of persons, in any court, or before any administrative or investigate agency (whether public, quasi-public or private) against Defendant, and each of them, and (b) releases Defendant from any and all claims and causes of action it has against Defendant arising out of the purchase, service, maintenance and licensing agreements which form the basis of the Plaintiff's claims.

In exchange for the consideration provided by Plaintiff in this Agreement, the sufficiency of which is hereby acknowledged, and except as to any action or proceeding to enforce the terms of this Agreement, Defendant (a) waives its right to commence, maintain, prosecute, or participate in any action, charge, complaint or proceeding (on their own behalf or on behalf of any other person or entity), whether individually or as a member of any alleged class of persons, in any court, or before any administrative or investigate agency (whether public, quasi-public or private), against Plaintiff, and (b) releases Plaintiff from any and all claims and causes of action against Plaintiff from the beginning of the world to the date of this Agreement.

3.    **Commitments**

In addition to the waiver and release of claims in paragraph "2" above, and in exchange for the promises made by the parties in paragraph "4" below, the parties agree they will each execute all documents and such supplemental, further or modifying documents, including, without limitation, the Stipulation For Entry of an Order of Final Dismissal With Prejudice

3

(annexed hereto as Exhibit A), needed to settle, dismiss and withdraw, with prejudice, any and all complaints, suits, actions, charges, claims or proceedings relating to all claims and counterclaims asserted in this Action.

## 4. Consideration

In exchange for Plaintiff's release and waiver of claims and the discontinuance with prejudice of this Action, Defendant shall:

a.    Pay to Plaintiff the total sum of $100,000, payable in four equal installments of $25,000 on August 1, 2005, November 1, 2005, February 1, 2006, and May 1, 2006;

b.    Deliver to Plaintiff, within five business days of the discontinuance of this action, the following products, including all documentation relating to the following products (collectively, the "Surrendered Products"):

| Product Name |
| --- |
| AllFusion® Gen 1-10 Developers License for COOL:Qwik MULTI-PLATFORM |
| AllFusion® Gen Implementation Toolset Option MVS |
| AllFusion® Gen Report Composer from CANAM Software MULTI-PLATFORM |
| CA Common Services MVS |
| AllFusion® Gen Proxy Programming Interface Option for Java MULTI-PLATFORM |

together with a certification to Plaintiff stating that Defendant has stopped all use of the Surrendered Products, has deleted all copies of the Surrendered Products from all computer libraries and storage devices, and has returned to Defendant all electronic media, documentation, and other items relating to the Surrendered Products, in the form annexed hereto as Exhibit "B;"

c.    Deliver to Plaintiff, on or before June 1, 2006 (the "Final Surrender Date"), the following products, including all documentation relating to the following products (collectively, the "Permitted Products"):

| Product Name |
| --- |
| AllFusion® Gen Encyclopedia Server Option IBM AIX |
| AllFusion® Gen Implementation Toolset Client/Serve WINDOWS NT |

AllFusion® Gen IT (C/S) IBM AIX
AllFusion® Gen Workstation Analyst Toolset WINDOWS-ALL
AllFusion® Gen Workstation Construction Toolset WINDOWS-ALL
AllFusion® Gen Workstation Cross Generation Option to UNIX MULTI-PLATFORM
AllFusion® Gen Workstation Cross Generation Option to Windows NT/2000 MULTI-PLATFORM
AllFusion® Gen Workstation Developer Toolset Option WINDOWS-ALL
AllFusion® Gen Communication Base Manager Option MULTI-PLATFORM
AllFusion® Gen Encyclopedia Construction Server IBM AIX
AllFusion® Gen Encyclopedia Cross Generation Option to UNIX MULTI-PLATFORM
AllFusion® Gen Encyclopedia Cross Generation Option to Windows NT/2000 MULTI-PLATFORM
AllFusion® Gen Middleware TCP/IP Option MULTI-PLATFORM

together with a certification to Plaintiff stating that Defendant has stopped all use of the

Permitted Products, has deleted all copies of the Permitted Products from all computer libraries

and storage devices, and has returned to Defendant all electronic media, documentation, and

other items relating to the Permitted Products, in the form annexed hereto as Exhibit "B,"

provided, however, that Defendant has the option to extend to extend the Final Surrender Date to

September 1, 2006 provided it pays to Plaintiff the sum of $25,000 on or before May 15, 2006.

5.    **Disclaimer of Warranty**

**PLAINTIFF AND DEFENDANT AGREE THAT DEFENDANT'S USE OF THE
PERMITTED PRODUCTS IS ON AN "AS IS" BASIS, THAT PLAINTIFF DISCLAIMS
ALL WARRANTIES, EXPRESS OR IMPLIED, INCLUDING WITHOUT LIMITATION
WARRANTIES OF MERCHANTABILITY AND FITNESS FOR A PARTICULAR
PURPOSE, AND THAT PLAINTIFF DISCLAIMS ANY OBLIGATION TO SUPPORT
OR PROVIDE TECHNICAL ASSISTANCE FOR THE PERMITTED PRODUCTS.
PLAINTIFF AND DEFENDANT FURTHER AGREE THAT DEFENDANT SHALL
NEITHER REQUEST NOR RECEIVE ANY MAINTENANCE SERVICES IN
CONNECTION WITH THE PERMITTED PRODUCTS (INCLUDING, BUT NOT**

LIMITED TO, TELEPHONIC SUPPORT, "BUG" FIXES, PATCHES, UPDATES, AND

NEW RELEASES).

6.     **Injunction; Money Judgment**

Plaintiff is entitled, in the event that Defendant defaults in its obligations under paragraph

4.b of this Agreement, after three days notice to Defendant of its default, to the immediate return

of the Surrendered Products and to the entry of a permanent injunction that bars Defendant from

all use of the Surrendered Products and directs it to delete all copies of the Surrendered Products

from all computer libraries and storage devices.

Plaintiff is entitled, in the event that Defendant defaults in its obligations under paragraph

4.c of this Agreement, after three days notice to Defendant of its default, to the immediate return

of the Permitted Products and to the entry of a permanent injunction that bars Defendant from all

use of the Permitted Products and directs it to delete all copies of the Permitted Products from all

computer libraries and storage devices.

Plaintiff is entitled, in the event that Defendant defaults in its obligations under paragraph

4.a of this Agreement to timely pay the installments due Plaintiff, after three days notice to

Defendant of its default, to a money judgment in the amount of $592,784.65, less any amounts

paid by Defendant under this Agreement, and to the entry of a permanent injunction that bars

Defendant from all use of the Permitted Products and the Surrendered Products and directs it to

delete all copies of the Permitted Products and the Surrendered Products from all computer

libraries and storage devices.

7.     **Right to Inspect**

Plaintiff may audit, with five (5) day's prior written notice, Defendant's available records

and information systems to confirm the accuracy of the certifications required by paragraphs 4.b

6

and 4.c of this Agreement. Plaintiff shall bear the expense of an audit with the exception of instances where Defendant is found, through such an audit, to be in violation of the certifications. In such instances, Defendant will be invoiced for, and shall promptly pay, all reasonable time, travel and material costs associated with the audit. Audits shall be conducted during regular business hours at Defendant's facilities and shall not unreasonably interfere with Defendant's business. Audits shall be conducted no more than twice in any twelve-month period. The right to audit will expire two years after Defendant's delivery of the certification for the Permitted Products, as provided for in paragraph 4.c of this Agreement.

**8.    Severability and Modification**

Should any provision of this Agreement or the attachments hereto be declared illegal or unenforceable by any court, administrative agency or other entity and cannot be interpreted or modified to be enforceable (which the parties authorize said court, administrative agency or other entity to do), such provision shall immediately become null and void, leaving the remainder of this Agreement in full force and effect.

**9.    Section Headings**

Section headings are used herein for convenience of reference only and do not affect the meaning of any provision of this Agreement.

**10.    Entire Agreement**

This Agreement, which incorporates as covenants the representations and clauses in the introductory "Whereas" clauses, represents the complete understanding among Plaintiff and Defendant about the matters set forth in this Agreement and shall be interpreted under New York law without regard to New York's conflict or choice of law provisions. Any action or proceeding arising under or relating to this Agreement shall be brought in a federal or state court

located in New York County, New York. No other promises or agreements shall be binding or shall modify this Agreement. This Agreement can be modified only by a written document signed by Plaintiff and by Defendant (or their legally designated representatives), which recites the specific intent to modify this Agreement.

11.     **Notice**

Except as otherwise specified in the Agreement, all notices, requests, approvals, consents and other communications required or permitted under this Agreement shall be in writing and shall be personally delivered or sent by (i) first class U.S. mail, registered or certified, return receipt requested, postage pre-paid; or (ii) U.S. express mail, or other, similar overnight courier service to the address specified below. Notices shall be deemed given on the day actually served by the party to whom the notice is addressed.

|  |  |
|---|---|
| In the case of Plaintiff: | Computer Associates International, Inc. One Computer Associate Plaza Islandia, NY 11749 Attn: General Counsel |
| In the case of Defendant: | AMX International Inc. c/o Michael D. Gaffney Beard St. Clair 2105 Coronado Idaho Falls, ID 83404 |

12.     **Continuing Jurisdiction**

The parties consent to the continuing jurisdiction of the Hon. Loretta Taylor Swain to enforce the terms of this Agreement.

**THE TERMS OF THIS AGREEMENT, INCLUDING THE WAIVERS AND RELEASES, ARE THE PRODUCT OF MUTUAL NEGOTIATION AND COMPROMISE BETWEEN PLAINTIFF AND DEFENDANT. THE PARTIES HAVE**

8

READ AND FULLY CONSIDERED THIS AGREEMENT AND MUTUALLY DESIRE

TO ENTER INTO THIS AGREEMENT.

COMPUTER ASSOCIATES INTERNATIONAL, INC.

By: Alexander G. Arato, Esq.
   Vice President, Senior Counsel

STATE OF NEW YORK )
         ) ss.:
COUNTY OF SUFFOLK )

On this _11th_ day of July, 2005, before me personally appeared Alexander G. Arato of Computer Associates International, Inc., personally known to me known or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he executed the same in his capacity and that by his signature on the instrument, the individual, or the person upon behalf of which the individual acted, executed the instrument.

**BARBARA BOLAND**
**Notary Public, State of New York**
**No. 01BO601047**
**Qualified in Suffolk County**
**Certified in Nassau County**
**Commission Expires July 13, 2006**

Notary Public

AMX INTERNATIONAL, INC.

By: Jay Price, President

STATE OF IDAHO )
       ) ss.:
COUNTY OF Bonneville )

On this _7_ day of July, 2005, before me personally appeared Jay Price of AMX International, Inc., personally known to me known or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he executed the same in his capacity and that by his signature on the instrument, the individual, or the person upon behalf of which the individual acted, executed the instrument.

Notary Public
Residing at · Rexburg, ID
My Commission expires : 6-21-10

FFDOCS1\631568.02

9

EXHIBIT "B"

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
                                        :

COMPUTER ASSOCIATES INTERNATIONAL, INC.,   :
                                          :  **Civil Action No.**

                         **Plaintiff,**     :   **04 CV 09134 (LTS)**
                                          :

        **- against -**             :  **DEFENDANT'S**
                                          :  **CERTIFICATION OF**

AMX INTERNATIONAL, INC.,            :  **COMPLIANCE WITH**
                                        :  **COURT'S ORDER DATED**

                        **Defendant.**     :  **SEPTEMBER 19, 2007**
                                          :
------------------------------------------------------------------X

        Jay Price, the president of AMX International, Inc, hereby certifies that AMX is no

longer using the "Permitted Products" defined by paragraph 4.c. of the Settlement Agreement in

any fashion.

        Mr. Price further certifies that all copies of the "Permitted Products" defined by

paragraph 4.c. of the Settlement Agreement have been deleted from all AMX computer libraries

and storage devices.

        Mr. Price additionally certifies that AMX International has returned to Computer

Associates International all electronic media, documentation, and other items relating to the

"Permitted Products" defined by paragraph 4.c. of the Settlement Agreement, to the extent that

there were any such items in AMX's possession.

DATED: October 2, 2007              AMX INTERNATIONAL, INC.

                                   BY: _____
                                      JAY PRICE, PRESIDENT

STATE OF IDAHO

ss.

County of Bonneville

On this October 2, 2007 before me, Michael D. Gaffney, an Idaho notary public,

personally appeared JAY PRICE, the president of AMX International, Inc., known or identified

to me to be the person whose name is subscribed to the within instrument, and acknowledged to

me that he executed the same.

Notary Public for Idaho
Residing At: Idaho Falls
Commission Expires: 8 / 2 / 12
(SEAL)

MICHAEL D. GAFFNEY
NOTARY
PUBLIC
STATE OF IDAHO

2

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------------X

CA, INC.,                                                    :
                                                             :
                                    Plaintiff,               :    Civil Action No.
                                                             :      07 CV 9799 (LTS)(KNF)
                         - against -                         :
                                                             :
AMX INTERNATIONAL, INC.,                                     :
                                                             :
                                                             :
                                    Defendant.               :
-----------------------------------------------------------------------X

## NOTICE OF CROSS-MOTION
## WITH SUPPORTING AFFIDAVITS